Jack W. Frost and M. E. Lawrence, both of Eastland, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

MORROW, Presiding Judge.

The offense is burglary; penalty assessed at confinement in the penitentiary for two years.

The indictment appears regular. The evidence adduced upon the trial is not brought forward for review. No complaint of the ruling of the trial court has been presented by bill of exception. In the absence of the evidence heard before the trial judge, this court is unable to appraise the matters presented in the motion for new trial.

The judgment is affirmed.

### SHROPSHIRE v. SALYER.
#### No. 4821.

Court of Civil Appeals of Texas. Amarillo.

Nov. 29, 1937.

Dan M. Cook, of Plainview, and Anderson & Girand, of Lubbock, for appellant.

Bean & Bean, of Lubbock, and E. M. Remington and Marshall & King, both of Graham, for appellee.

FOLLEY, Justice.

On the 17th day of May, 1934, Charlotte Pool Shropshire executed a will. In this will she devised all of her property, consisting of real estate in Floyd, Hale, and Hockley counties, to her two minor children by her second marriage. These two children were Betty Lou Shropshire and David Shropshire. To a child of a former marriage, Billie Pool, she bequeathed the sum of $10. She named her brother, M. H. Salyer, the appellee herein, as independent executor of said will. She also made him trustee of some of the property devised to the daughter, for him to keep the same in trust until said daughter reached the age of thirty years. The property devised to the Shropshire children was, under the terms of the will, to pass to the appellee in case of their death before they reached the age of twenty-one. The appellee was also appointed by said will as the personal guardian of the Shropshire children. The second husband of the testatrix, the father of the Shropshire children, had died before the will was made.

This will was offered for probate in the county court of Lubbock county, Tex., and the appellant, J. E. Shropshire, who is the paternal grandfather of the two Shropshire children, filed a contest in said court. The will was probated by the county court and the appellant appealed to the Ninety-Ninth district court of Lubbock county, Tex. There the cause was tried de novo. The appellant in the district court alleged that the will of May 17, 1934, had been revoked by an instrument written by the testatrix some time in September, 1935. This writing was alleged to be in the form of a letter from the testatrix to Mrs. Ruby Helm, a sister-in-law of the testatrix, and the daughter of appellant. The appellant asked that such letter be probated as the last will and testament of Charlotte Pool Shropshire. In the alternative, he asked that in the event such instrument was not a will that it be held to revoke the will of May 17, 1934. This letter was shown to have been lost, but parol evidence was offered from four witnesses to prove its contents. Mrs. Helm testified she received such letter and that she afterwards gave it to her mother, Mrs. J. E. Shropshire, the wife of appellant, who, in turn, mailed it to M. J. Baird, an attorney at Sherman, Tex. Such attorney had represented the appellant in the contest in the county court. He appeared in the district court only as a witness. He stated he received such letter and that it was signed by Charlotte Pool Shropshire. Such letter was lost after he received it and he was never able to find it. He stated, however, that he remembered its contents. The four witnesses who testified as to the contents of the letter were Mrs. Ruby Helm, Mrs. J. E. Shropshire, M. J. Baird, and Mrs. W. L. Odom, who was a neighbor of the appellant in Hale county. The effect of the letter, according to the testimony of these witnesses, was that Charlotte Pool Shropshire declared that the will of May 17, 1934, was not her will any longer and she was going to make a new will. The court, after hearing the testimony, gave a peremptory instruction against the appellant and in favor of the appellee, allowing the will of May 17, 1934, to be probated. He also appointed the appellee as the guardian of the two minor Shropshire children, in accordance with the terms of the will. From such judgment, the appellant has appealed to this court.

The appellant assigns as error the action of the trial court in giving a peremptory instruction, and in the court's refusal to submit the question of revocation to the jury. He asserts that the testimony in regard to the letter sufficiently raised the question of the revocation of the 1934 will in such manner that such issue should have been passed on by the jury.

The testimony shows that the appellee, M. H. Salyer, had possession of the 1934 will at the time the purported letter of September, 1935, was written. He lived at New Castle, in Young county, Tex. The letter in question was supposed to have been written by the testatrix while she was visiting her brother at New Castle, or just after she had returned to Floydada, Tex., where she visited her foster mother, or aunt. The testimony was somewhat conflicting on this point. All the

witnesses, however, testified substantially the same in regard to the contents of the letter. With reference to that portion of the letter which the appellant asserts was a revocation of the prior will, the witness M. J. Baird testified as follows: "She also stated in the letter she wanted it understood that the will she had prior thereto made and in possession of her brother at New Castle was not her will any longer. She said she couldn't destroy it because it was in his possession, but it didn't express her wishes any longer and wasn't her will, and she stated that she would probably make a formal will later, another one. She also stated that she wanted her two children, of which Mr. J. E. Shropshire was the grandfather, in case of her death, she wanted them to have charge of her children, and to have the management of her property, whatever was left to the children. She also stated in the letter that she was making some arrangements to locate in Lubbock."

Mrs. Ruby Helm testified with reference to the contents of the letter as follows: "She said she had made a will and her brother had it willing everything to her brother and it was her will no longer and she was going to change it, and she wanted the children and property to go to Mr. and Mrs. Shropshire, my father and mother, and that is practically all. The property was to go to her two children."

Mrs. Odom testified in regard to the letter as follows: "She just said she was going to change her will as the one she had made wasn't her will any longer and she wanted to change it if anything happened to her to give possession of the children and property to Mr. and Mrs. Shropshire."

Article 8285 of the Revised Civil Statutes sets out the manner in which a will may be revoked in the following language: "No will in writing, made in conformity with the preceding articles, nor any clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence."

It is evident from the above statute that a "declaration in writing," if executed under the formalities above set out, is sufficient to revoke an existing will.

We think the most outstanding case of this character is the case of Brackenridge et al. v. Roberts et al., 114 Tex. 418, 267 S.W. 244, 246, 270 S.W. 1001, in which the Supreme Court of Texas has written extensively upon the subject of revocation. In that case the testator, on his deathbed, wrote a pencil memorandum in which he revoked all wills prior thereto. In that case the purported instrument was lost and never produced in court. Its contents, however, were testified to by an attending nurse and one other witness, each of whom could only remember the beginning of the instrument, which was in substance that it revoked all prior wills. Each testified that she saw the signature of the testator at the bottom of the writing. In discussing that case, Judge Pierson, speaking for the Supreme Court, said:

"The court, as requested by plaintiffs in error, should have submitted to the jury for its determination the question as to whether or not Mr. Brackenridge intended the writing testified to by Mrs. Mitchell and Mrs. Peeler to be and to constitute his last will or a declaration in writing revoking former wills. To give the instrument the legal effect either of a will or of a revocation of former wills it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury. * * *

"The statute itself bars from probate a revoked will. The statute itself forecloses the issue of the revival of a revoked will. Under it a will once revoked is at an end. Nothing short of a new will, a new execution, and a new publication of it as a will will give it validity and admit it to probate. Neither can the fact that a subsequent and revoking will is lost and cannot be produced or proven for probate have that effect. The execution of a subsequent will, which is lost, doubtless does indicate that the testator did not intend to die intestate, but the court cannot make for him a will or supply a testament by admitting to probate a will that has been set aside by him by the execution of a subsequent will.

"The controlling issue in this case is whether or not Mr. Brackenridge executed a will subsequent to the 1913 will with the present intention that it be his will and to revoke former wills. If so, the will of

1913 was revoked by it and could not be probated, even though such subsequent will be lost and could not be substantially proven for probate, but only that it had been executed according to legal requirements and was in fact a will."

In an earlier case, Hawes et al. v. Nicholas, 72 Tex. 481, 10 S.W. 558, 560, 2 L.R.A. 863, the Supreme Court of Texas held where a will was made in 1879 revoking a will made in 1873, and the later will was destroyed by the testator, that the 1879 will, though destroyed, was a revocation of the will of 1873. From the opinion in that case, we quote: "In our state a statute prescribes the method of revoking a will to be 'by a subsequent will, codicil, or declaration in writing executed with like formalities, or by the testator destroying, canceling, or obliterating the same, or causing it to be done in his presence.' Rev.St. art. 4861. A written declaration, properly executed, as effectually revokes a will from the date of its execution as does its destruction. If the purpose to revoke is sufficiently expressed, and the writing is properly executed, it cannot be controlled or limited by the name given the instrument, or by its containing other provisions. If the will of 1879 was properly executed as a will, and contained a clause expressly revoking the will of 1873, we do not think that the subsequent destruction of the will of 1879 had the effect of reviving the will of 1873."

In the case of Dougherty v. Holscheider, 40 Tex.Civ.App. 31, 88 S.W. 1113, 1117 (writ dismissed), a testator was held to have revoked an existing will by writing two letters to his attorney in which letters he attempted to dispose of his property contrary to the provisions of a prior will. The letters were written just before he underwent an operation and his desires in the letters were made dependent on the outcome of the operation. Having survived the operation, the court held that the letters did not constitute a will, since the contingency did not arrive upon which they were based; however, the court further held that such letters were an entire revocation of the former will. From the opinion in such case, we quote:

"In this case Raf Welder wrote a holographic will which, by a disposition so repugnant to that disposition made of the property in the will executed in 1900, was to all intents and purposes a full revocation of it. He sent that will to his trusted attorney and friend, and he must have known that it was in his custody, and yet he made no effort to destroy it. It may be said in this connection that he made no effort to destroy the first will either; but it was shown that it was not in his possession, but in that of Mrs. Holscheider, who kept it securely in the safety vault of a bank. If it was his deliberate intent, as evidenced by the making and publishing of the holographic will, to revoke the first will, that intention, if not shown to have afterwards been changed, should be carried into execution, even though it carried with it the presumption that he wished to die intestate. It would not have been unnatural if he had deliberately made up his mind to die intestate and permit his estate to descend as the law directs that a father's estate shall descend in case of intestacy.

"It has been held that, where wills were denied probate on account of having been obtained through undue influence and because not executed as provided by statute, they could not be used to show revocation because void in toto, and this would vitiate the revocation as well as other parts of the will. But the holographic will in this case is not a void instrument, but one that has lost its disposing power because based on a contingency which did not happen. It is at least a 'declaration in writing,' executed with the formalities required of holographic wills, and the intention is plain to divert the property from Mrs. Holscheider, and as evincing such intention is legitimate evidence to go before a jury."

From the holdings in the above cases and the authorities which they cite, it is our opinion that the question of revocation was so sufficiently raised in the instant case that the issue should have been submitted to a jury. This opinion is strengthened by the attempt of the testatrix, on her death bed, to make a new will. While working for a firm of lawyers in Lubbock, Tex., she was stricken with arsenic poisoning. While in the hospital at Lubbock, some three or four days before her death, she asked for Mr. George W. Dupree, one of the attorneys for whom she worked. She stated to him that she desired to make a will in keeping substantially with the terms testified by the witnesses that the purported letter contained. The only discrepancy was that the instrument then finally prepared, provided that each of her three children should share alike in her property. Such instrument, after being prepared by the attorney, was

sent to the hospital for her execution. The testimony shows that the testatrix was never physically able to sign her name to the instrument and died leaving the instrument unexecuted. Before her death in the hospital, she stated to the nurses and to several witnesses that she desired her two Shropshire children to go to Mr. and Mrs. Shropshire.

In this case we have no jury finding of any sort relative to the purported letter. All that we have is a peremptory instruction by the trial court which eliminates the letter and its import. Granting that it is possible that such letter was, in fact, never written by the testatrix, yet this possibility is not supported by a jury finding. On the other hand, we have positive testimony that such a letter did in fact exist. We think whether or not such letter was written was a fact issue for the jury. Its contents and the intention of the testatrix in regard thereto were also fact issues that should have been determined by a jury. If such letter was written by the testatrix containing the language asserted by the witnesses, it, at least, possessed the possibility or potency of a revocation. Under the above authorities we think such letter would have been a revocation of the 1934 will if such had been accompanied by an intent of revocation on the part of the testatrix. Such evidentiary matters were for the jury and not the court to pass upon. We think the court was unauthorized to give a peremptory instruction in this case, and we sustain such assignment of error.

■ It is our opinion that the trial court was correct in refusing to probate the letter in question as the last will and testament of the testatrix. Such letter was not offered for probate in the county court, and the district court was without authority to probate it. 44 Tex.Jur. 887, par. 306.

■ The appellant also complains of the introduction of testimony over his objections from the appellee, M. H. Salyer, to the effect that the testatrix never at any time requested the appellee to destroy the will of 1934. This testimony, if false, could have been contradicted by the testatrix, if living, and since the witness was the independent executor and proponent of the will, we think such testimony was clearly in contravention of article 3716, R.C.S. 14 Tex.Jr. 327, par. 543.

■■ The appellant further assigns as error the court's action in appointing the appellee as guardian of the Shropshire children in keeping with the terms of the will of 1934. Since we have held that the court erred in probating such will, making it necessary to reverse and remand this cause, the judgment as a whole will, therefore, be set aside. The provision as to the guardianship will necessarily have to abide the disposition of the cause upon another trial. In this connection, we think article 4119, R.C.S., clearly gives authority to a testator to appoint such a guardian. In the event such will is not probated, all of its provisions will be null and void. As the record now stands, we deem it unnecessary to determine the question of guardianship as presented by the appellant.

The judgment of the trial court is reversed and the cause remanded.