**HAMILL & SMITH v. PARR.**

No. 11314.

Court of Civil Appeals of Texas.
San Antonio.
July 28, 1943.

Rehearing Denied Sept. 1, 1943.

Vinson, Elkins, Weems & Francis, of Houston, Johnson & Rogers, of San Antonio, Bryan, Suhr & Bering, of Houston, and Yale Hicks and Horace C. Hall, both of Laredo, for appellants.

U. S. Algee, of Laredo, Lloyd & Lloyd, of Alice, M. J. Raymond, of Laredo, Bobbitt, Dickson, Derby & Holland, of San Antonio, and Kazen & Kazen and Elmore H. Borchers, all of Laredo, for appellee...

SMITH, Chief Justice.

George B. Parr brought this action against Claud B. Hamill and R. E. Smith, comprising the firm of Hamill and Smith, to recover an undivided one-fourth interest in an oil and gas lease upon a tract of 420 acres of land in Webb County, and one-fourth of the net profits derived from oil operations on the land. Parr recovered as prayed for and Hamill and Smith have appealed.

Prior and subsequent to the transactions involved here, appellants and appellee were personal friends, as well as business associates in other matters.

In April, 1936, appellants were operating upon what was known as the Bruni tract, and were about to bring in what they believed would prove a producing oil well on that tract. The 420-acre tract involved, belonging to the Benavides heirs,

adjoined the Bruni tract and lay just across the boundary from the prospective well. This proximity led appellants to seek a lease on the Benavides, believing it would be as productive as the Bruni promised to be. The Benavides heirs were represented by Albert Martin, who resided at Laredo. Appellants were not acquainted with Martin, but knew or surmised that appellee and Martin were personal and political friends, and decided to invoke appellee's influence and efforts to procure the coveted lease through Martin. They called appellee by phone at his home in San Diego, 106 miles away, and asked him to meet them the next day at the Bruni well. Appellee met them, as requested, and the three men went over the situation in detail, and then entered into a parol agreement that if appellee would procure the desired lease from Martin and the heirs he would have an undivided one-fourth interest therein and appellants the remaining three-fourths interest. In short, the parties agreed to engage in a joint adventure to procure the lease; that to this end appellee was to contribute his services in acquiring the lease and have an undivided one-fourth interest therein for his services, while appellants were to pay appellee's expenses in procuring the lease and contribute the full purchase price therefor and have the remaining three-fourths interest therein. It was a familiar transaction, the validity and enforceability of which is uniformly recognized in this State. The agreement of the parties included the further stipulation that appellee, if successful in procuring the lease, should take the same in his own name and pay the $19,000 consideration therefor and that appellants would reimburse him for his outlay. These agreements were carried out; appellee procured the lease, gave the lessors his personal check for $8,000 and agreed to pay them the balance of $11,000 upon perfection of title. Appellants covered appellee's check for $8,000 when presented at the latter's bank for payment, and also furnished him $11,000 with which he made the final payment to the lessors. By these processes appellee took the legal title to the lease, as well as his equitable title to one-fourth interest, and held the remaining three-fourths interest in implied trust for appellants. Appellants then took possession of the leased premises and began operations thereon for oil and gas purposes. During these transactions appellee was at large under the terms of a two-year suspended sentence

given him in a federal court for income tax evasion. Two or three months after acquiring the lease appellee, having violated his parole, was arrested and imprisoned in a federal reformatory in Oklahoma. It developed that it might become necessary or convenient to use the title to the lease for the purpose of financing the operations thereon through mortgages and the like, and in order to facilitate those operations and because of appellee's inaccessibility, appellants proposed to appellee that he transfer the lease to them, for the convenience of all. In this situation it was agreed between the parties that appellee transfer the lease to appellants upon the express condition that appellants would hold appellee's one-fourth interest in trust for him until he was freed, and that in the meantime they would proceed with their operations and, as the jury found, "take care of the financing and would develop and operate said lease for the mutual benefit of" appellee and appellants. In reliance upon this agreement appellee executed and delivered the assignment of the lease to appellants. Upon appellee's release from prison a few months later he returned to his home. Subsequently appellants repudiated and refused to perform their agreement, and appellee brought this action to enforce the same.

 The cause was submitted to the jury which found in accordance with the foregoing facts. As appellants do not specifically challenge any of those findings they must all be given full effect in this decision, the same as if based upon uncontroverted testimony in the record. It is true that appellants assert in their sixth point that the evidence adduced in support of the theory of a trust was not as clear and satisfactory as the law requires. We conclude that the evidence was sufficient to meet that requirement and accordingly overrule the point.

██ In their points one, two and three appellants contend that appellee was prohibited from recovering, upon the asserted ground that he received and appropriated secret profits in the transaction involved, which, it is alleged, he concealed from appellants. The facts in this connection show that when appellee undertook in appellants' behalf to procure the lease, and after negotiations with the agent of the prospective lessors, he reported back to appellants the fact that the price asked for the lease was

728

$19,000, and that he would want or required $2,000 additional to cover his "expenses, costs or what not, to get the lease." Appellants readily agreed to this expenditure and later on paid appellee the $2,000. Upon the trial appellee accounted for expenditures by him out of said $2,000, except $300 to $500. Appellee's explanation of how he applied those expenditures was somewhat hazy and unsatisfactory, perhaps, and even implied that some of it was parceled out in satisfying personal or political debts or obligations of his own. But that implication, even if justified, does not bring appellee within that class of agents who accept secret profits from others with whom they may be dealing in behalf of their principals, such as in Bute v. Stickney, Tex. Civ.App., 160 S.W.2d 302, cited and relied on by appellants. There was nothing secret about this transaction, for here appellants willingly gave appellee $2,000 demanded by him for his use in his discretion in procuring the lease. The fact that he may not have expended the entire amount to accomplish the object intended, or that he may have spent some of it unwisely, or for his personal benefit, could not be given effect to invalidate appellants' agreement that appellee have an interest in the lease procured by him for appellants. If appellants had any remedy against appellee in that incident, which is doubtful under the facts, it was one for an accounting to them of his application of the fund. We overrule appellants' points one, two and three.

■ In their fourth point appellants contend that the parol agreement upon which appellee was awarded an undivided one-fourth interest in the lease in question contravened the Statute of Frauds. We overrule the point. It is well settled that the Texas Statute of Frauds does not operate upon agreements creating a trust in lands, such as in this case. 20 Tex.Jur. pp. 213, 268, 269, §§ 5, 59, 60, and authorities there cited.

■ It appears that appellee assigned the lease to appellants during his enforced absence, in order to enable appellants to borrow money on the property, if that became necessary to further their operations, and to facilitate division orders and the like. The assignment was made by appellee, as has been stated, upon the express parol condition that appellants would hold a one-fourth interest therein in trust for appellee and operate the lease for the mutual benefit of both parties pending a reconveyance of the one-fourth interest to appellee. It appears that in appellee's absence from the State appellants did mortgage the lease for an amount less than the value of appellee's one-fourth interest, and afterwards discharged the mortgage lien out of proceeds from the operations of the lease. Appellants contend in their fifth point that as they had so mortgaged the property with appellee's consent, they thereby acquired title to the whole interest in the lease, and no trust existed in favor of appellee. Appellants cite Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885, to support their contention. That case is distinguishable from the case made here and this distinction is well pointed out in the later case of Knight v. Tannehill Bros., Tex.Civ.App., 140 S.W.2d 552. In this case the assignment of the lease from appellee to appellant, although absolute in form, was nevertheless impressed with a parol trust, in appellee's favor, of an undivided one-fourth interest in the lease, and as between the parties that trust is now enforcible, even though the lease in the meantime was encumbered for a short period, when the encumbrance was released, leaving the way clear to appellants to perform their obligation to appellee in accordance with their prior agreement. Such agreements have always been held to effect valid and enforcible trusts, notwithstanding the Statute of Frauds or other defenses set up here by appellants. 20 Tex. Jur. p. 268, §§ 59, 60, and authorities there cited; McAllister v. Eclipse Oil Co., 129 Tex. 449, 98 S.W.2d 171; Cluck v. Sheets, Tex.Sup., 171 S.W.2d 860; Schultz v. Scott, Tex.Civ.App., 210 S.W. 830. We overrule appellants' fifth point.

■■ In their seventh point appellants contend that appellee was barred from recovery because of delay in asserting his right, and bringing this action to enforce the trust in his favor. The trust agreement was made and appellee executed the assignment to appellants in pursuance thereof in June, 1936. Appellee first made formal demand upon appellants to perform in June, 1941, and filed this action a few days later. Appellants neither sought nor elicited a jury finding upon this subsidiary issue of laches, and it will be presumed that the trial judge impliedly found against appellants thereon. We conclude that the

evidence was such as to support the implied finding, since it was sufficient to show that appellee had no knowledge, until shortly before bringing this suit, that appellants intended to repudiate their agreement. His duty to sue did not arise until such knowledge was brought home to him. Murphy v. Johnson, Tex.Civ.App., 54 S.W. 2d 158, and authorities there cited. We overrule point seven.

In their eighth and ninth points appellants complain of the refusal of the trial court to submit their requested issues two and three. We overrule those points for the reasons that, first, the matters included in the requested issues were designed to present special defenses which were not affirmatively pleaded by appellants, who filed only a general denial thereto, and, second, for the reason that the special issues submitted by the court embraced the controlling issues in the case as pleaded and supported by testimony. Rule 279, Texas Rules of Civil Procedure. Moreover, it appears that the issues requested by appellants and rejected by the court were substantially included in issues actually submitted to the jury, and it was the duty of the court to refuse the requested issues in deference to Rule 279.

In their tenth point appellants complain of the argument of some of appellee's numerous counsel. The point reads as follows: "Reversible error was committed by Counsel for appellee in their argument to the jury: (a) by making a political appeal; (b) by misstating the testimony of witnesses: (c) by discussing matters not in evidence nor constituting reasonable inferences from evidence in the record; (d) by statements calculated to arouse prejudice against appellants."

It appears that appellee's counsel include the then district attorney of Webb County and his immediate predecessor and the County Judge and County School Superintendent, as well as a former resident and district attorney of the county, who is prominent in political and civic affairs of the State. It also appears that three of the jurors trying the case were employees of Webb County, and four of those peremptorily cut off the jury list by appellants were employees of Webb County, and one was a son of another county employee. Moreover, some of the witnesses for appellee upon the trial were officials or employees of Webb County or the City of Laredo. In their argument to the jury some of counsel for appellee went over the list of his witnesses, stating and commenting upon the weight of their testimony. Appellants complain of those tactics upon the part of counsel and charge that their argument was political in nature and was intended to and did impress the jury that it was to their best interest to return a verdict for appellee, represented and supported by the testimony of their political or official buddies as well as official benefactors. To give effect to appellants' point and inferences, we would have to say that it was the prerogative of appellants, rather than appellee, to select appellee's own counsel and; moreover, that it was the privilege of appellants, rather than appellee, to determine whom he should call as witnesses in establishing the facts of his case. It is true that a number of appellee's witnesses were county or city officials or employees, as were some of the jurors. But the witnesses testified to relevant facts in proving collateral but apparently essential elements of appellee's case, and it cannot be said that appellee should be denied their testimony because of their relation to public affairs and public offices, and the jury. Appellants did not object to their testimony, or its competency; obviously they could not do so. It is true that the testimony of some of the witnesses was adduced to establish facts collateral to the principal issue, which facts appellants recognized as relevant and competent by themselves putting them in evidence. It is possible that appellants could have forestalled the occasion of calling those witnesses by admitting those facts in advance, rather than belatedly, and thereby cut off the argument of appellee's counsel, of which appellants now complain. If the relations between appellee's counsel and their witnesses and the jurors were so interlocked as to menace appellants' rights, as they now contend, appellants' primary remedy lay in a timely challenge to the panel, and in the voir dire examination of the jurors, and by timely, rather than belatedly, admitting the subsidiary facts testified to by the witnesses.

Referring further to appellants' tenth point and the objection therein that in their argument to the jury appellee's counsel misstated the testimony of witnesses, we are of the opinion that if counsel's argument constituted actual misstatements rather than strained or false deductions, which is in doubt, we are of the

opinion that such misstatements were upon trivial or immaterial matters and were not of such serious moment as to authorize reversal. Moreover, appellants did not object to those statements at the time they were made, and certainly they were not of such inflammable nature that their effect could not have been eradicated from the minds of the jury by immediate withdrawal by counsel or admonition from the court, which it is presumed would have been done upon timely and appropriate objection, if in fact the argument was subject to objection. The same may be said of the remaining complaint in appellants' tenth point, that in their argument appellee's counsel discussed matters not in evidence or reasonably inferable from the evidence, and that such argument was reasonably calculated to arouse prejudice in the minds of the jury against appellants. We overrule appellants' tenth point.

■ In their eleventh point appellants complain of the admission of several pages of the deposition of appellee's witness James Anderson, concerning the geology of the lease in question, and the drilling of a well on the adjoining Bruni lease. The chief objection urged by appellants to that testimony is that it was immaterial, incompetent and confusing. The testimony objected to is set out at great length in appellants' brief, and no purpose could be served by reproducing it here. It is sufficient to say that some of the testimony was relevant in part as in rebuttal to testimony adduced by appellants, and while some of it may have been irrelevant, or even incompetent, certainly none of it was of such harmful nature as to require reversal of the judgment. The point is overruled.

■ In their twelfth and last point appellants contend that one-fourth of the amounts they paid for the lease and for expenses incurred by appellee in procuring the lease should have been deducted from the judgment in favor of appellee. The point is presented only formally and without argument or authority to support it, and appellee's reply is equally perfunctory. The agreement upon which the lease was procured was that appellants would pay for the lease and all expenses incident to its procurement, without cost to appellee other than his admittedly effective services in acquiring it for their joint use, and that when the lease was procured appellants would own an undivided three-fourths interest and appellee the remaining one-fourth. We see no reason or authority, and appellants present none, to support their contention that those original transactions should be employed in computing appellee's share of the proceeds from the operations upon the lease. The point is overruled.

The judgment is affirmed.