NATIONAL LIFE & ACC. INS. CO. v.
HANNA.

No. 13699.

Court of Civil Appeals of Texas. Dallas.

May 31, 1946.

Rehearing Denied June 28, 1946.

Wm. M. Bates of Dallas, for appellant.

DeShazo & Hyde and Francis M. Chaney, all of Dallas, for appellee.

YOUNG, Justice.

Defendant's judgment on the pleading was reversed (183 S.W.2d 1023). The instant jury trial to the merits, involving defendant's liability on the policy, resulted in judgment for plaintiff inclusive of interest and attorneys' fee.

Assured, Charles Mimms Hanna, died January 25, 1942, and appellant had paid appellee widow face value of the policy ($500), claiming such to be in full of its liability. This suit was for an additional $500, charging that the death of Mr. Hanna was by bodily injury, sustained solely through external, violent and accidental means within the meaning of policy recital, viz.: "Provisions as to Benefit for Death by Accidental Means. Upon receipt of Due Proof that the Insured after attainment of age 5 and prior to the attainment of age 70 has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of the policy, and resulting in the death of the Insured within ninety days from the date of such bodily injury while the policy is in force, and while no premium is more than four weeks in arrears, the Company will pay, in addition to any other sums due under the Policy and subject to the provisions of the Policy, a Benefit for death by accidental means equal to the face amount of insurance stated in the Policy * * *."

The proof concerning cause of Mr. Hanna's fatal illness was in all respects consistent with trial pleading, and the following digest of material testimony is taken from appellant's brief: Ethel Allene Hanna testified that about noon, Friday, January 9, her husband came home complaining of a cold and chill; that he went to bed in afternoon, she calling Dr. Roland Brown who sent a prescription which she had filled (sulfanilamide and aspirin), administering same until that night, Mr. Hanna feeling no better, temperature re-maining high. The doctor then came, diagnosing the ailment as influenza, advising regular dosages of the prescription. This continued until Sunday, patient getting worse, temperature rising from 102 to 104, witness so reporting to Dr. Brown who ordered hospitalization. Upon immediate X-ray of patient's lungs, use of aforesaid medicine was stopped, the doctor saying: "Stop it. His lungs are as clear as mine. Stop it, that isn't what's wrong with him." Hospital and medical services continued until her husband's death two weeks later, Mrs. Hanna not then knowing the cause.

Dr. Brown, in written deposition from an overseas army base, stated that on first visit he found Hanna suffering with what appeared to be either influenza or virus pneumonia, patient complaining of chills and high fever, generalized aching, chest pains and slight cough, initial remedy being sulfanilamide therapy and aspirin to control fever; that such was the usual and customary treatment given by Dallas County physicians for the particular illness, and ordinarily a cure. In his opinion death was caused by toxic agranulocytosis (absence of white cells in the bone marrow and blood). He further testified that these drugs were taken orally (swallowed) by Mr. Hanna and death would not ordinarily be expected from their use either singly or in combination; that the cause of death was unforeseen and unexpected at time therapy began, such result in treatment of similar cases being quite rare; that the allergy or sensitivity of Mr. Hanna to the drugs was unknown to witness and a condition unusual to persons generally; stating that while it was reasonable to suppose the sulfanilamide and aspirin was responsible for Mr. Hanna's death, much larger doses could be given over a longer time before causing agranulocytosis, it not being a reasonable expectation that the amount of drug given deceased would cause such result. No blood or other test was made during said illness beginning January 9, Dr. Brown answering twelfth cross-interrogatory: "To the best of my knowledge, there are no such tests that can be made prior to the administration of sulfanilamide to determine the effect the drug might have when given in thera-

peutic doses. However, a complete blood count, Kline test and Huddleson agglutination test were made in my office on or about December 27, 1941. This blood count was entirely normal. It showed no signs of agranulocytosis, although he was already taking sulfanilamide. The Kline and Huddleson tests were negative."

Points of appeal are threefold in scope, complaining of error (1) in the court's refusal to grant motion of defendant for peremptory instruction and in submission of the cause on special issues, all evidence showing undisputably that defendant had paid appellee all that she was entitled to under said policy; (2) error in not submitting defendant's special issues 1 to 5, inclusive; (3) error of court in overruling defendant's objections to certain questions and answers in the deposition of Dr. Brown, and in sustaining appellee's objection to cross-interrogatory and answer No. 16.

Summarized, the jury answers were: (1) That Dr. Brown administered the usual and ordinary doses of sulfanilamide and aspirin to C. M. Hanna for the illness which he had prior to his death; (2) C. M. Hanna was sensitive to such doses of sulfanilamide and aspirin; (3) his death resulted solely from doses of sulfanilamide and aspirin prescribed by Dr. Brown; (4) such death, from the doses given, was unexpected. (Issues 5, 6, 7 and 8 relate to matters not brought into this appeal and are omitted.) Under issue 9 the amount of attorneys' fee was fixed at $300.

The pleadings of both parties are the same as on first appeal, petition of Mrs. Hanna summing up above narrative of facts in allegations that her husband thereby sustained bodily injury, solely through external, violent and accidental means, resulting in death within meaning of the policy sued upon. That aforesaid fatality resulted from ordinary dosages of sulfanilamide and aspirin, independently of all other causes, was not affirmatively challenged by defendant; expressly denying, however, that the occurrence constituted bodily injury whereby death was produced by external, violent and accidental means; alleging "as is admitted in the plaintiff's petition, that his death resulted from the effects of sulfanilamide tablets which were taken voluntarily by the insured without knowledge that he was sensitive to such drug and defendant further alleges that the taking of such drug caused his death."

■ The only distinguishing feature of these two appeals is that in the first, petitioner's allegations were taken as true, while here the facts were developed upon a trial. We have already held in the prior litigation that if the death of Mr. Hanna was caused by the taking of a drug under doctor's prescription, in ordinary manner and dosage usually resulting in good health, but, due to bodily sensitivity, producing instead an unforeseen and fatal result, such result was within above-quoted terms of the policy as a death by "accidental means." Undoubtedly the law of the former case is controlling of the instant jury findings and undisputed facts. Burrell v. Adams, 104 Tex. 183, 135 S.W. 1156; Sutherland v. Friedenbloom, 200 S.W. 1099 (writ ref.); Central, etc., Bank v. First National Bank of Waco, Tex.Civ.App., 246 S.W. 111.

Appellant points to error in the court's refusal of its five requested issues asking separately if the death of insured resulted from (1) bodily injury sustained solely through external means; (2) bodily injury sustained solely through violent means; (3) bodily injury sustained solely through accidental means; (4) bodily injury sustained solely through external, violent and accidental means; (5) whether influenza or atypical (virus) pneumonia contributed to the death of assured.

■ Relative to these refused issues as well as to those included in the court's charge, the detail of events immediately preceding Mr. Hanna's death was presented in testimony well-nigh undisputed; and under the doctrine already applied in Hanna v. Rio Grande Life Ins. Co., Tex.Civ.App., 181 S.W.2d 908, plaintiff's grounds of recovery, so established, comprehend a death by accidental means, i. e., those (means) producing effects which were not their natural and probable consequences. International Travelers' Ass'n

736

v. Francis, 119 Tex. 1, 23 S.W.2d 282. To plaintiff's claim that aforesaid manner of death was a risk insured against, defendant has simply interposed a general denial; and all questions of fact requisite to plaintiff's cause of action having been sufficiently covered in the controlling issues given, rejection of defendant's issues 1 to 4, inclusive, was not error. Lockley v. Page, 142 Tex. 594, 180 S.W. 2d 616; Postal Mutual Ind. Co. v. James, Tex.Civ.App., 154 S.W.2d 148; Texas Practice Rule 279. Moreover, the refused issues called for mixed findings of law and fact, and obviously objectionable, absent appropriate explanations or definitions; the phrase "solely through external, violent and accidental means" having a definite legal significance not ordinarily known to the average person. 41 T.J., par. 231, p. 1033.

 Defendant's refused issue No. 5 inquired in effect as to whether death was contributed to by either influenza or atypical pneumonia. We do not believe that the particular defense was raised under the medical testimony given; but, if raised, the matter was not affirmatively pled. Hamill & Smith v. Parr, Tex.Civ. App., 173 S.W.2d 725. See Texas Practice Rule 279, providing: "A party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part."

 The following interrogatories and answers of Dr. Brown were admitted in evidence on behalf of plaintiff, over objection that the questions were leading and suggestive, assuming facts not previously stated by the witness: "(16) If you have stated Mr. Hanna was allergic to sulfanilamide, please state whether or not that condition was known to you. Ans. No, sir, his allergy or sensitivity to the above named drugs was unknown to me. * * * (17) If in answer to the above, you have answered it was unknown, please state whether or not said condition was unusual to persons generally. Ans. Yes, sir, it is unusual to persons generally."

Interrogatories 19 and 20 were admitted over objection that the questions were multifarious, leading and suggestive; and further that No. 20 called for an opinion without identifying the drug, whether sulfa, aspirin or what; and without sufficient predicate in testimony as to amount or quantity. Appellant did not file a motion to suppress the deposition on basis of above objections as required by Rule 212, Texas Rules of Civil Procedure, old Art. 3765; Tallabas v. Wing Chong, Tex.Civ. App., 72 S.W.2d 636; and any defects in form of the particular questions and answers were waived.

 Upon objection, the court excluded cross-interrogatory No. 16 and answer of Dr. Brown, viz.: "In your opinion did the death of Charles Mimms Hanna result from bodily injury sustained by him solely through external, violent and accidental means?" (Answer) "No, sir, the death of Mr. Hanna did not result from bodily injury through external cause." The interrogatory and reply constituted a clear invasion of the jury's province, seeking to elicit an opinion on the ultimate fact in issue. Art. 3713, Rule 36, Vernon's Ann.Civ.St.; aside from which, the question called for a pure conclusion of the witness upon a mixed question of law and fact. Houston & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808; Hutchins v. Humble Oil & Refining Co., Tex.Civ.App., 161 S.W.2d 571.

Appellant's points of error are not tenable and the judgment under review is affirmed.

BOND, C. J., dissents; adhering to the opinion heretofore expressed in Hanna v. Rio Grande Life Ins. Co., Tex.Civ. App., 181 S.W.2d 908, to effect that no liability under terms of the policy was proven.