Mrs. Elizabeth TURNER, Appellant,

v.

L. J. TURNER et al., Appellees.

No. 79.

Court of Civil Appeals of Texas.

Tyler.

Nov. 19, 1964.

E. C. Wellborn, Henderson, C. F. Wellborn, Gladewater, for appellant.

Goldon Wellborn and Rex Houston, Henderson, for appellees.

SELLERS, Justice.

This is a will contest in which the will of Arthur Turner, deceased, is sought to be probated. The instrument dated July 6, 1955, was originally offered for probate in the County Court of Rusk County, Texas, by the Proponent, Elizabeth Turner, the surviving wife of Arthur Turner. Contestants, L. J. Turner, Mozelle Turner Baker, Marie Turner Wayland and Annie Turner Tucker, the surviving children of Arthur Turner by a previous marriage contested the probate of the instrument alleging, in addition to a general and special denial, undue influence on the part of Mrs. Elizabeth Turner. They specially denied that the instrument offered for probate was the will of Arthur Turner.

The instrument offered for probate was dated July 6, 1955. Under its terms decedent bequeathed all of his property to his wife, Elizabeth Turner, reciting therein that he was not unmindful of his four children, but that he had already given to each of them a just share of his life's earnings.

After a trial in the County Court judgment was entered admitting the will to probate. Contestants duly perfected their appeal to the District Court of Rusk County and by amended petition and in addition to a general and special denial alleged undue influence on the part of the Proponent, and further alleged that the instrument offered for probate "was revoked by a later will which was duly executed by Arthur Turner, deceased, according to the solemnities of law."

The case was tried before a jury and in response to the two Special Issues submitted by the court,[1] the jury found (1) that the will was procured by undue influence on the part of Elizabeth Turner, and (2) also found that decedent, Arthur Turner, had executed a subsequent will dated January 24, 1962, intending to revoke the former will. Based upon the verdict, the trial court entered judgment denying probate of the instrument to which the Proponent, Elizabeth Turner, duly perfected this appeal.

In substance, Proponent contends that the judgment should be reversed because (1) there is no evidence, or at least insufficient evidence, to sustain the jury's verdict; (2) the alleged errors of the court in admitting certain testimony over Proponent's objection; (3) error by the court in failing to require one of Proponent's witnesses be brought to court, and (4) because of the alleged error of the court in admitting testimony concerning revocation of the will without proper pleadings.

Proponent's 1st, 2nd and 4th Points assert that there is no evidence, or at least insufficient evidence, to support the jury's findings of undue influence and revocation. These points will require a brief review of the record.

Before discussing the testimony, it should be pointed out that prior to trial Contestant, L. J. Turner, conveyed to his three sisters all of the right, title and interest which he could have or might have in the estate of his father, Arthur Turner, by inheritance or otherwise, and disclaimed

---

1. "SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence in this case that the making and execution of the instrument dated July 6, 1955 introduced in evidence as Arthur Turner's last will and testament was procured by undue influence on the part of Mrs. Elizabeth Turner?
    "Answer 'Yes' or 'no.'
    "ANSWER    Yes
    "SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that on or about January 24, 1962,

Arthur Turner executed the instrument testified to by L. J. Turner and Jack Glenn Crawford in the presence of Jack Glenn Crawford and H. H. Wellborn intending same to be and constitute his last will and intending same to revoke all former wills?
    "Answer 'Yes' or 'No.'
    "ANSWER:   Yes   "

any interest or right to his estate from any source. He then moved to be dismissed as a party to the suit. The court granted the motion and dismissed L. J. Turner from the case.

Contestants produced testimony showing that Elizabeth Turner and Arthur Turner were married in 1947 and although occasionally separated lived together until his death on September 19, 1962; that his marriage to Elizabeth Turner was his fourth marriage subsequent to his divorce from Mattie Lou Turner, the mother of Contestants; that despite his domestic difficulties Arthur Turner had always remained kind and affectionate to his children and grandchildren; that although the will recited gifts to his children, no substantial gifts had been made, but he had at various times made loans and advances to all of his children. The testimony further revealed that Mr. Turner had suffered several heart attacks throughout the years commencing in 1947 and had otherwise been in poor health since that time. Deceased's son, L. J. Turner, testified as to numerous conversations with his father after his marriage to Elizabeth Turner in which his father often expressed his displeasure with Elizabeth Turner's attempts to influence him in the disposition and control of his property. According to the testimony of both L. J. Turner and Jack Glen Crawford, a grandson, Arthur Turner called them to his home on January 24, 1962, and while there he stated to them that he had requested them to come to his home during Mrs. Turner's absence because he desired to explain to them, in the absence of his wife, how he wanted his estate handled. He then explained to his son in the presence of Crawford that he had theretofore on that date signed a new will which had been prepared by Mr. H. H. Wellborn, an attorney. He stated that Wellborn and Crawford had been to his home that morning and that he had signed the will in the presence of Wellborn and Crawford as witnesses. He said that he had revoked the previous will and that he wanted the will

that he had signed that morning to be his last will. He said he wanted to leave all of his property to his children; that his only reason for making the previous will in 1955 was because his wife, Elizabeth Turner, had threatened to leave him unless he willed her all of his property. He said, "she would kill me if she knew that I was changing my will * * *." He then took the will from a nightstand beside the bed and asked his son to read it so he could hear it, which he did. According to the testimony of both of these witnesses, the will recited that Arthur Turner was above the age of 21 years; was of sound mind and that he was revoking all prior wills signed by him and that all of his estate was to go to his four children. They also testified that he then told them that he had never been satisfied with the first will because he felt like he had been forced to sign it to keep her from leaving him, further stating that the 1955 will was not in his possession and that he therefore wanted to be sure that they knew he had revoked it and replaced it with the subsequent will and requested them to see that his wishes were carried out.

L. J. Turner further testified that on this occasion his father told him that within a short time after he and Elizabeth were married "she started hounding him day and night for a will, wanted him to make her a will leaving everything to her, said it got to the point where he couldn't get any rest without her hounding him day and night and he made her a will willing her his stuff, and said at the time he done it he knew it wasn't right but that was the only way he could get any peace was to let her have her way."

He further testified that prior to his father's death he told him that he had placed the second will in an old trunk in a utility room behind his home; that immediately after his father's funeral he went to the Turner home and as he arrived he saw Mrs. Turner coming out of the utility room; that he went to the trunk and found that it had been opened and some of the

old clothing therein had been disarranged; that he made a search for the will but was never able to find same; that he then asked Elizabeth Turner for the will and other papers that were in the trunk but she denied any knowledge of a will in the trunk; and she advised him that the other papers were in the house but that he was not going to get them.

According to the testimony of E. C. Wellborn, attorney for the Proponent, Arthur Turner came to his office in 1955 and requested him to prepare his will. He was alone at the time. Both he and the other subscribing witness, M. H. Barton, testified he was also alone when he later returned to Mr. Wellborn's office for the purpose of executing the will. Mr. Wellborn also testified that he had visited with Mr. Turner on three occasions after he executed the will, the last of which was in September, 1962, and that on each occasion Mr. Turner inquired as to whether his will would stand up and that he assured him that it would; that although he and his brother, H. H. Wellborn, occupied adjoining law offices, he knew nothing of his brother having prepared a second will; that H. H. Wellborn died shortly before the trial of this cause.

Mrs. Elizabeth Turner testified that the first time she saw the will or had any knowledge of its existence was in September, 1957.

We will consider first the "no evidence" points relating to the question of revocation.

■ This being a proceeding to probate a will in which a contest has been filed, the inquiry in broad terms is whether the will sought to be probated is the testator's will or whether it is not. Such an inquiry embraces the question of whether the will offered for probate had subsequently been revoked. Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402.

■■ Upon the question of revocation Proponent had the burden of proving that the will had not been revoked. This burden is discharged and the will entitled to probate when its due execution is proved, in the absence of circumstances which cast suspicion on it, or in the absence of evidence of revocation. There is a presumption of continuity of status which constitutes a prima facie case against revocation. If, however, the Contestants put in sufficient evidence to rebut the presumption, then the burden of going forward with the evidence shifts back to the Proponent of the will and he must, by a preponderance of the evidence, discharge his burden of proof that the will was not revoked. McElroy v. Phink, 97 Tex. 147, 76 S.W. 753; Brackenridge v. Roberts, 114 Tex. 418, 436, 267 S.W. 244, 270 S.W. 1001; May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180.

■ In determining the question presented by the "no evidence" assignment, we must view the evidence most favorably to the jury's verdict and disregard that militating against it. When viewed in this light, if there is any evidence of probative force to sustain the findings of the jury, such findings will not be disturbed on appeal. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696.

■ With regard to the question of revocation, it is our opinion that the testimony of Jack Glen Crawford showing that he was present and witnessed the signature of the testator at the time he executed the second will on January 24, 1962, together with the testimony of both he and L. J. Turner showing that some eight months prior to the death of the testator, while visiting with him at his home during illness, he requested that the instrument, revoking the previous will and bequeathing all of his property to his children, be again read to him, after which he proclaimed same to be his last will, together with the other testimony in the case, constitutes evidence of sufficient probative force to establish the existence of a subsequent revoking will, which served not only

to rebut the Proponent's prima facie case against revocation, but also to sustain the jury's finding of revocation and the judgment based thereon. Clover v. Clover, Tex.Civ.App., 224 S.W. 916, error ref.; Brackenridge v. Roberts, supra.

■ Upon the question of undue influence, we have carefully reviewed all of the evidence in light of the pronouncements in the following authorities and have concluded that there is no evidence of probative value sufficient to support a finding on undue influence. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Rothermel v. Duncan, Tex., 369 S.W.2d 917.

■ By Points 3 and 5 Proponent contends that the court erred in submitting Special Issue No. 2 because same was not supported by the pleadings and was multifarious. No objection having been made on either of these grounds in the trial court on these points, the objections were waived. Rule 274, Texas Rules of Civil Procedure, Safety Casualty Co. v. Link, Tex.Civ.App., 209 S.W.2d 391, 395; Minugh v. Royal Crown Bottling Co., Tex.Civ.App., 267 S. W.2d 861, error ref.; Gale v. Spriggs, Tex. Civ.App., 346 S.W.2d 620.

■ Points 6, 7, 9, 10, 11, 12 and 13 are submitted and briefed together as a group. As our discussion will later demonstrate, each of the points presented here are separate and distinct complaints about matters which are in many respects wholly unrelated. Under the statement and argument following these points, some of the points are completely ignored, while others although discussed, make no reference to the record where the error complained of may be found. According to the rules of procedure, such points are improperly grouped and improperly briefed and for that reason would not ordinarily be subject to appellate review. Outlaw v. Bowen, Tex.Civ.App., 285 S.W.2d 280, citing cases: Carrick v. Hendrick, Tex.Civ.App., 351 S.W.2d 659; Wheat v. Citizens National Bank at Brownwood, Tex.Civ.App., 310

S.W.2d 735; Rule 418, T.R.C.P. However, because of our liberal policy to consider such points so grouped and presented so long as we can determine with some degree of certainty what the party is complaining about, we have given consideration to all of the points, some of which will be briefly discussed.

■ Point 6 complains of the action of the court in overruling an objection to the deposition testimony of witness Crawford on the ground that the answers given were evasive and not direct. No reference having been made to any specific question or answer, the objection was too general and was properly overruled; furthermore, the deposition having been on file for more than one day before trial without any written objection, any complaint on this ground was waived. National Life & Acc. Ins. Co. v. Hanna, Tex.Civ. App., 195 S.W.2d 733. Rule 212, T.R.C.P.

■ Point 7 complains of the action of the court in admitting the testimony of L. J. Turner asserting a violation of Article 3716, Vernon's Ann.Tex.St., known as the Dead Man's Statute. The brief makes no reference as to where the objection and adverse ruling may be found. If such objection was made, we have been unable to find same in the record; therefore, the point presents nothing for our consideration and appears to have been waived. Point 13 complains of certain alleged prejudicial remarks made by Contestants' attorney in the closing argument. Here again, such argument, if made, does not appear in the record and thus presents nothing for review. The other points within this group relate to the admission and exclusion of testimony. We have considered these points and find no error in the rulings made by the court and such points are likewise overruled

■ The 8th, 14th and 15th Points of Error are not followed by either a statement or an argument and will therefore be treated as waived. Texas Employers'

Ins. Ass'n. v. Tate, Tex.Civ.App., 214 S.W. 2d 877; Rayburn v. Giles, Tex.Civ.App., 182 S.W.2d 9.

By Point 16 Proponent contends that the trial court erred in failing to bring before the court Douglas Hays, a witness who had been duly subpoenaed. The record reveals that when the case was called for trial Proponent, although knowing that the witness was not present, voluntarily proceeded to trial without any complaint. During the process of trial, at the request of the Proponent, the court caused an attachment to issue. Immediately before the close of the testimony, upon being advised that the witness could not be located, counsel for the Proponent announced: "Then we will have to close without his testimony, Your Honor." No motion for postponement or continuance was made, nor did the court make any ruling requiring that the testimony be closed. The record fails to disclose the materiality of the witness's testimony or what the witness would have testified if present. We fail to find any merit in this point. Proponent having failed to move for postponement or continuance and having voluntarily announced he would close without the testimony and having made no complaint in the trial court is in no position to complain, having waived any right which he may have had and cannot be heard to complain for the first time on appeal. Fordham v. Butane Gas & Equipment Co., (Tex.Civ.App.) 198 S.W.2d 607.

Points 17, 18 and 19 contend that evidence offered on the question of revocation should not have been admitted because not supported by the pleadings. As we understand these points, Proponent claims the trial court should not have permitted the introduction of any testimony concerning revocation of the will contending that since the issue of revocation was not originally raised by the pleadings in the probate court Contestants could not raise such an issue for the first time on appeal to the District Court, and alternatively the pleadings on revocation were vague and indefinite. While the pleadings of the Contestants filed before the Probate Court did not use the term "revocation", they did allege that the instrument offered for probate was not the will of Arthur Turner. No exception was taken to this pleading in the Probate Court, nor was there any exception to the pleadings in District Court. Proponent made no objection to the testimony.

It is well settled that where no objection is made to the pleadings as insufficient, or to the introduction of evidence because not supported by the pleadings, the issue of insufficiency of pleadings cannot be raised for the first time in the appellate court. Ogden v. LeSueur, Tex.Civ.App., 236 S.W.2d 872; Benham v. Southern, Tex. Civ.App., 242 S.W.2d 682.

Moreover, the Texas Probate Code, among other requirements, places the burden upon the Proponent of a will to prove to the satisfaction of the court that the will was not revoked by testator. Sec. 88(b) (3), Texas Probate Code, V.A.T.S. This statutory requirement must be proved whether there is a contest and whether the pleadings raise the issue or not. Usher v. Gwynn, Tex.Civ.App., 375 S.W.2d 564; Ashley v. Usher, Tex., 384 S.W.2d 696; Shropshire v. Salyer, Tex.Civ.App., 110 S. W.2d 917; May v. Brown, supra; Brackenridge v. Roberts, supra; McElroy v. Phink and Usher v. Gwynn, supra. The points are therefore thought to be without merit and are overruled.

Finding no reversible error, the judgment of the trial court must be affirmed.

Affirmed.