## BRACKENRIDGE et al. v. ROBERTS et al. (No. 3923.)

(Supreme Court of Texas. Dec. 10, 1924.)

**1. Wills ⬳317—Evidence held to require submission of requested issue whether penciled writing was new will or revocation of former wills.**

Where testimony raised issue as to whether testator executed writing with present intention that it be his last will or as penciled memorandum for new will, requested issue as to whether he intended it as a will or declaration in writing revoking former wills should have been submitted to jury.

**2. Wills ⬳72, 170—Present intention to that effect essential to make instrument will or revocation of former wills.**

To give instrument legal effect either as will or revocation of former wills, it must be written or signed with present intention to make it will or revocation.

**3. Appeal and error ⬳1060(1)—Trial ⬳122 —Permitting argument that witnesses were not permitted by statute to testify to transactions with decedents held error and prejudicial.**

In will contest, after withdrawal of questions to witness, incompetent under Rev. St. art. 3690, permitting argument referring to questions and fact that witnesses were not permitted under statute to testify to declarations by, and transactions with, deceased, and for that reason counsel were afraid to insist on witnesses testifying, held erroneous and prejudicial.

**4. Wills ⬳179—Will revocable by subsequent will executed by like formalities.**

Wills validly executed under Rev. St. arts. 7857, 7858, may be revoked under article 7859 by subsequent will executed with like formalities.

**5. Statutes ⬳225¾—Presumption prevails that Legislature in re-enacting statute adopts judicial construction thereof.**

When a state statute has been construed by a court of last resort, and is substantially re-enacted, presumption prevails that Legislature adopted such construction.

**6. Wills ⬳198—Destruction by testator of subsequent will held not to revive former will.**

Under Rev. St. arts. 7857–7859, providing for execution and revocation of wills, fact that testator himself may have destroyed subsequent will cannot have effect to revive prior will.

**7. Wills ⬳206—Revoked will barred from probate by statute.**

Under Rev. St. art. 3271, § 5, if it is established that will has been revoked, it cannot be admitted to probate.

**8. Wills ⬳180—Loss of revoking will cannot give effect to prior one.**

Fact that subsequent or revoking will is lost and cannot be produced or proved under Rev. St. art. 3272, cannot give effect to former revoked will.

**9. Wills ⬳306—Not necessary to produce revoking will or to prove contents by witness who has read it.**

It is unnecessary, under Rev. St. art. 3272, that subsequent will, to have effect of revoking former will, be produced or its contents substantially proved by one witness who has read it or heard it all read.

Error from Court of Civil Appeals of Fourth Supreme Judicial District.

In the matter of the estate of George W. Brackenridge, deceased. Proceedings by M. E. Brackenridge and another to probate decedent's will, opposed by Isabella H. Roberts and another. Order denying probate was affirmed by the Court of Civil Appeals (245 S. W. 786), and proponents bring error. Reversed and remanded for new trial.

Williams & Neethe, of Galveston, and Denman, Franklin & McGown, F. C. Davis, and Marshall Eskridge, all of San Antonio, for plaintiffs in error.

Boyle, Ezell & Grover, and H. P. Drought, all of San Antonio, for defendants in error.

W. A. Keeling, Atty. Gen., for the State.

PIERSON, J. This case was referred to Section A of the Commission of Appeals. Thereafter its presiding judge, S. H. German, prepared and filed with the court a very exhaustive and far-reaching opinion. Inasmuch as the opinion dealt with very important questions of first impression affecting the law of wills, and also overruled a prior decision of this court, it was deemed advisable to withdraw the case from the Commission and to set it for hearing and opinion by the court.

We adopt Judge German's statement of the case as follows:

"This suit involves a contest of a will and codicils executed by George W. Brackenridge, late of Bexar county, Tex. The will proper was executed with all the formalities required by law September 8, 1913. Afterwards at different times Mr. Brackenridge executed and appended to said will eight codicils; the last being dated August 30, 1918. Each of these codicils was in his own handwriting, except the last, which was written by Judge T. H. Franklin, and was properly signed and witnessed. It is not necessary for us to refer to the provisions of this will, except to say that it sought to dispose of a large estate consisting of both real and personal property.

"George W. Brackenridge died in Bexar county December 28, 1920. On January 17, 1921, Miss M. Eleanor Brackenridge, the then sole surviving sister of George W. Brackenridge, filed in the county court of Bexar county an application for the probate of this will and the various codicils. In due time Mrs. Isabella H. Roberts and Mrs. Isabella H. McIntyre, who are nieces of George W. Brackenridge, filed formal objections to the probate of said will. The state of Texas was permitted to intervene, due to the fact that the state university

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was an interested party. On a hearing in the county court, by order of March 28, 1921, the will with its codicils was admitted to probate. From this order appeal was taken by the contestants, Mrs. Roberts and Mrs. McIntyre, to the district court of Bexar county. In the district court contestants amended their pleadings, setting out more fully the grounds upon which they contested the probate of the will. They alleged that the will and codicils filed for probate had been revoked by the said George W. Brackenridge in this way:

"First, by a subsequent will, wholly written by the said George W. Brackenridge in his own handwriting, the contents of which will were unknown to contestants, except that it contained a clause expressly revoking all prior wills; that this subsequent will was executed some time during the month of December, 1920, and the same had never been in their possession.

"Second, by the execution of a declaration in writing wholly written by the said Brackenridge in his own handwriting, the contents of same being unknown to contestants, but that it stated in substance that it revoked all former wills and codicils. It was alleged that this declaration was written some time during the month of December, 1920, and had never been in the possession of contestants.

"The testimony is voluminous, and it is not necessary to notice more than a small portion of it. As touching the issue of the execution by George W. Brackenridge of the instrument of December, 1920, and its contents, the evidence may be briefly summarized as follows:

"For some time prior to his death Mr. Brackenridge had expressed a desire to make some changes in his will of 1913. Some time in 1917 or 1918, at his request, Leroy G. Denman prepared an instrument, intended to take the place of the former will and all codicils, with some changes. Mr. Brackenridge was not satisfied with some of the changes, and took the instrument with him, saying that if he decided to execute it he would write it in his own handwriting. Some three or four months before his death he went to his place of business where the will of 1913 was kept, and took it to his home, where it remained until the day of his death. At about the time he took the papers to his home he expressed a desire to make some slight changes in the will.

"Mrs. Ila H. Mitchell, who attended Mr. Brackenridge as day nurse for some two years before his death, testified substantially as follows: That some time in December, 1920, the exact date she could not name, but possibly about the 12th of that month, Mr. Brackenridge stated that he had decided to write his will. That he began to write, using a pencil and a blank sheet of paper, being what was commonly known as a second sheet of letter paper. That he wrote on this paper at different times for several days, and she thinks completed the writing about the 15th of December. That about the 18th of December she heard him say that he was glad he had finished his will. That after the writing was finished she saw the instrument on Mr. Brackenridge's table, and read the beginning clause. She could not remember the date, but testified that it was dated and had the signature of George W. Brackenridge at the bottom of the writing on the page. That the writing covered a considerable part of the page, being written in very small letters, in the handwriting of Mr. Brackenridge, and entirely with pencil. She never read any part of the instrument, except the beginning clause, which was about to the effect that it was the last will of the said George W. Brackenridge and revoked all other wills theretofore made. She knew nothing whatever of its contents, except as to the revoking clause, and that the name of Miss Eleanor Brackenridge was written in the instrument. She also testified that prior to the time she last saw this paper Mr. Brackenridge had kept it in the envelope or package with the will of 1913 and other papers. She last saw this instrument on the table with other papers on the 18th day of December, 1920, while Dr. Vinson was present with Mr. Brackenridge.

"Mrs. George Peeler, whose husband is a son of a niece of George W. Brackenridge, testified substantially as follows: That she frequently visited Mr. Brackenridge at his home and was familiar with his handwriting. That she was in his room on the 18th day of December, 1920, and at that time saw an instrument, which she designated as his will, on his table, written on a sheet of white paper, in the handwriting of Mr. Brackenridge, being dated and having his signature to same. That the writing covered about three-fourths of the page. That she looked at it twice, but did not read any part of it, except the beginning clause, which was, as stated by her, to the effect that it was the last will of the said George W. Brackenridge and revoked all former wills made by him. She did not see the name of Miss Eleanor Brackenridge on the paper. This was the last and only time she ever saw this instrument.

"Judge Thos. H. Franklin testified that he was at the home of Mr. Brackenridge on December 14, 1920, at which time a certain deed in trust was executed. At that time he asked Mr. Brackenridge if he had ever sent his will back to the Loan & Trust Company for safekeeping, and Mr. Brackenridge replied that he had not, and that he had determined to make no changes in it whatever. Dr. R. E. Vinson testified in substance that he was at the home of Mr. Brackenridge on the 16th, 17th, and 18th of December, 1920, during which time he read to Mr. Brackenridge the will of 1913 and discussed its provisions with him. That at that time Mr. Brackenridge expressed himself as being satisfied with the will of 1913, and stated that he desired to make no change, except to add the name of one trustee, unless he changed his mind, which he always reserved the right to do. About two days before his death Mr. Brackenridge requested his sister, Miss Eleanor Brackenridge, to take a package of papers, which he spoke of as containing his will, to the bank for safe-keeping. On the morning of the 28th of December, Miss Brackenridge took a package of papers, pointed out to her by her brother, and which she thought was the same package which he had tendered to her about two days before, and deposited them in her lock box at the bank. After the death of Mr. Brackenridge this package of papers was opened in the presence of Miss Brackenridge, and among other papers contained the will of 1913 and its various codicils. The writing testified about by Mrs. Mitchell and Mrs. Peeler was not in the package.

"The trial court submitted to the jury only two questions, as follows:

" '1. Did the said George W. Brackenridge during the latter part of the year 1920 write an instrument in pencil and sign the same containing words to the effect that he revoked all previous wills made by him?'

" '2. Was such instrument wholly written by the said George W. Brackenridge in his own handwriting?'

"Both of these questions were answered in the affirmative. On these answers the court rendered a judgment denying the application to probate the will of 1913 and its codicils, and adjudging that the same had been revoked. This judgment was affirmed by the Court of Civil Appeals at San Antonio. 245 S. W. 786."

The trial court rested the whole decision purely on the fact of the testator's writing and signing an instrument containing an expression of revocation, and whether it was wholly in his own handwriting. The case thus rests entirely upon the mechanical acts of the testator, regardless of his intention as to the writing or for what use or for what purpose it was prepared by him. It might be presumed that such a paper was intended to revoke a prior will and also to become a last will, if the instrument bears on its face no evidence to the contrary, and the circumstances surrounding its preparation do not impeach or contradict such intention. But to say that a penciled note, even though signed and in his handwriting, is a will, notwithstanding it was executed under circumstances that becloud its purpose as a testamentary declaration, and throw such doubts around it as that reasonable minds might conclude that he did not execute it as a will or as a revocation, is to carry that presumption far beyond reason.

Under the facts and circumstances of the preparation of the writing in December, 1920, by Mr. Brackenridge, in this case it clearly becomes a question of fact, an important issue of fact to be determined by the jury, as to whether such writing was intended to be and was his last will, and to have effect as such, and to effect a revocation of his prior will.

The Supreme Court of Appeals of Virginia, in Clark v. Hugo, 130 Va. 99, 107 S. E. 730, in discussing this question said:

"It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed * * * with all due solemnity. * * *

"It is true that no particular language or form is necessary to constitute a valid will, and that the surrounding circumstances are admissible to explain, in a proper case, the intention of the testator; but one may execute a paper with every formality known to the law and by it devise all his property, but, unless he intends that very paper to take effect as a will, it is no will."

[1, 2] The court, as requested by plaintiffs in error, should have submitted to the jury for its determination the question as to whether or not Mr. Brackenridge intended the writing testified to by Mrs. Mitchell and Mrs. Peeler to be and to constitute his last will or a declaration in writing revoking former wills. To give the instrument the legal effect either of a will or of a revocation of former wills it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury. The testimony clearly raises the issue as to whether Mr. Brackenridge executed the instrument of 1920 with the present intention that it be his last will or as a mere penciled memorandum, concerning which he was to deliberate and finally use or reject, in case he should decide to write a new will. Rymes v. Clarkson, 161 Eng. Reprint, 901; Kirkcudbright v. Kirkcudbright, 162 Eng. Reprint, 601; In re Olmsted's Estate, 122 Cal. 224, 54 P. 746; McIntyre v. McIntyre, 120 Ga. 67, 47 S. E. 504, 102 Am. St. Rep. 71, 1 Ann. Cas. 606; Gardiner v. Gardiner, 65 N. H. 230, 19 A. 65, 8 L. R. A. 383; McBride v. McBride, 26 Grat. (Va.) 476; Early v. Arnold, 119 Va. 500, 89 S. E. 900; Fleming v. Morrison, 187 Mass. 120, 72 N. E. 499, 105 Am. St. Rep. 386; In re Harrison's Will, 183 N. C. 457, 111 S. E. 867.

[3] We think the trial court erred in overruling proponents' objections and in permitting counsel for contestants to question them (Mrs. Roberts and Mrs. McIntyre) relating to certain conversations and transactions with deceased about which, under article 3690, R. S., they were incompetent witnesses, and, after attorneys on their own accord had withdrawn such questions, then to permit them in argument to refer to such questions and the fact that Mrs. Roberts and Mrs. McIntyre were not permitted by statute to testify to declarations by and transactions with George W. Brackenridge, deceased, and for that reason they were afraid to insist upon these parties testifying as to the facts. The questions, their withdrawal, and the comments in argument were a violation of the principle and the spirit of article 3690. Such errors will necessitate a reversal of the case. Our holding in this particular applies to that part of their testimony relating to conversations with the deceased or connecting him with the acts testified about. Inasmuch as this error will hardly occur upon another trial, we do not deem it necessary to further state the facts or discuss the law.

If it be established that Mr. Brackenridge

(267 S.W.)

did execute a will in December, 1920, or a declaration in writing revoking former wills, and it be found that same had been destroyed by him with the intent to revoke it, then it becomes a pertinent inquiry as to what effect the execution of such subsequent will had upon his former will of 1913 offered here for probate.

Article 7859, R. S., reads:

"No will in writing, made in conformity with the preceding articles, nor any clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence."

[4] It was held in Morgan v. Davenport, 60 Tex. 230, that "no valid written will can be revoked in Texas, except in one of the modes pointed out by the statute." We think it equally clear that such a will can be revoked by any one of the modes pointed out by the statute, and that article 7859 means that a will in writing made in conformity with legal requirements may be revoked by a "subsequent will * * * executed with like formalities."

Articles 7857 and 7858 provide the requisites and methods by which a valid will may be executed.

The modes of revoking a will are as definitely prescribed in article 7859 as the modes of making it, and no essential part of the one can be dispensed with any more than the other.

Plaintiffs in error urge the view that the destruction of such subsequent will left the former will in force, or had the effect to revive it. Both of these views were definitely ruled on, we think correctly, by this court in Hawes v. Nicholas, 72 Tex. 481, 10 S. W. 558, 2 L. R. A. 863. In that case propositions were made and the issues clearly presented: (1) That since no part of a will can become operative before the death of the testator, a subsequent will which is itself destroyed and revoked can have no effect to annul a former will, even though such subsequent will contained an express clause of revocation of all former wills; (2) that though Revised Statutes provide several modes by which a will may be revoked, one being by a subsequent will, yet, if a subsequent will has been destroyed, with the purpose of revoking it, such subsequent will is, in legal contemplation, no will at all, and cannot affect a prior will left in existence by the testator; (3) for a subsequent will to have the effect to supersede and annul a previous will, it must be in existence at the testator's death, and must be produced and proved and admitted to probate, without which it has no effect for any purpose. A number of authorities were cited in support of these propositions. Page 482.

After reviewing authorities on both sides of the issues, Associate Justice Henry decides them in the following language:

"In our state a statute prescribes the method of revoking a will to be 'by a subsequent will, codicil, or declaration in writing executed with like formalities, * * * or by the testator destroying, canceling, or obliterating the same, or causing it to be done in his presence.' Rev. Stat., art. 4861.

"A written declaration properly executed as effectually revokes a will from the date of its execution as does its destruction. If the purpose to revoke is sufficiently expressed and the writing is properly executed, it cannot be controlled or limited by the name given the instrument, or by its containing other provisions.

"If the will of 1879 was properly executed as a will and contained a clause expressly revoking the will of 1873, we do not think that the subsequent destruction of the will of 1879 had the effect of reviving the will of 1873."

[5] Article 4861 as it existed in 1889 is now article 7859 without change. Since the Legislature in this article provided that a testator may revoke his will by a subsequent one, and since this court, as far back as 1889 in the above case, construed the statute to mean that the execution of a subsequent will had the effect to immediately revoke such prior will, regardless of the continued existence of such subsequent will, and since many Legislatures have met since and have made no change in the rule, the court would not now announce a different and exactly contrary construction, and thus legislate where the Legislature has declined to do so. The statutes have been revised and recodified twice since 1889; once in 1895 and again in 1911. Thus has the Legislature twice re-enacted this article with the construction placed upon it by this court. When a statute has been construed by the court of last resort of a state, and the same is substantially re-enacted, the presumption prevails that the Legislature adopted such construction. Cooper v. Yoakum, 91 Tex. 391, 43 S. W. 871; Cargill & Dennis v. Kountze Bros., 86 Tex. 386, 22 S. W. 1015, 25 S. W. 13, 24 L. R. A. 183, 40 Am. St. Rep. 853; Michie's Digest, vol. 15, p. 978; 25 R. C. L. § 297.

[6-8] Under our law the fact that the testator may have himself destroyed a subsequent will cannot have the effect to revive a prior will found with his papers. Numerous authorities could be cited that hold that a revoked will cannot be revived by declarations and acts indicating such an intent, and that nothing short of a new execution and new publication consistent with the requirements of law, as in its original execution, will suffice to give it validity, yet we need not go further than our own statutes for final authority upon the subject in Texas. If it once be established that a will has been revoked, that fact is a fatal barrier to its being admitted to probate. Article 3271, § 5, R. S., provides:

"Before admitting a will to probate, it must be proved to the satisfaction of the court * * * that such will has not been revoked by the testator."

The statute itself bars from probate a revoked will. The statute itself forecloses the issue of the revival of a revoked will. Under it a will once revoked is at an end. Nothing short of a new will, a new execution, and a new publication of it as a will will give it validity and admit it to probate. Neither can the fact that a subsequent and revoking will is lost and cannot be produced or proven for probate have that effect. The execution of a subsequent will, which is lost, doubtless does indicate that the testator did not intend to die intestate, but the court cannot make for him a will or supply a testament by admitting to probate a will that has been set aside by him by the execution of a subsequent will.

The controlling issue in this case is whether or not Mr. Brackenridge executed a will subsequent to the 1913 will with the present intention that it be his will and to revoke former wills. If so, the will of 1913 was revoked by it and could not be probated, even though such subsequent will be lost and could not be substantially proven for probate, but only that it had been executed according to legal requirements and was in fact a will.

If a subsequent will could have no effect as a revocation until after the death of the testator, such subsequent will, if lost, even though its existence and the intention of the testator as to its effect as a will were clear, could not affect prior wills. This would annul and abrogate that provision of the statute which provides that a will in writing, made in conformity to legal requirements, may be revoked "by a subsequent will." Under this construction a subsequent but lost will could have no effect for any purpose, unless its contents could be substantially proven for probate as provided in article 3272, R. S.

[9] What we have said disposes of the fourth assignment of error of plaintiffs in error, wherein they say the Court of Civil Appeals erred in construing article 3272, R. S., and in holding that for a subsequent will to have the effect of revoking a former will it was not necessary that such former will be produced or its contents substantially proven by at least one witness who had read it all or heard it all read, and in holding that article 3272 applied only where such will was offered for probate. We find no error in this holding of the Court of Civil Appeals. In re Brackenridge's Estate, 245 S. W. 790, and cases cited.

For the reasons stated, the judgments of the Court of Civil Appeals and of the trial court are reversed, and the cause is remanded to the district court for new trial.

CURETON, C. J., took no part in the decision of this case.