### REDMOND v. REDMOND.
#### No. 10497.

Court of Civil Appeals of Texas.
San Antonio.

March 29, 1939.

Rehearing Denied April 26, 1939.

W. E. Pope and A. J. Pope, Jr., both of Corpus Christi, for appellant.

Purl & Pearson and T. H. Burruss, all of Corpus Christi, for appellee.

SMITH, Chief Justice.

On November 21, 1933, Dr. Henry Redmond, a practicing physician in Corpus Christi for thirty-four years, executed and published his last will and testament, with all the formalities required by law, as follows:

"The State of Texas, County of Nueces, City of Corpus Christi.

"Know all men by these presents, that I, Henry Redmond, of the City, County and State aforesaid, being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking and annulling all former wills by me at any time heretofore made.

"First, I give and bequeath to my wife, Ida Durand Redmond, all my property of whatsoever nature, kind or character whether real, personal or mixed of which I may die seized or possessed or to which I may then or at any time thereafter be entitled to.

"Second, I hereby constitute and appoint my said wife, Ida Durand Redmond, sole executrix of this my will, and it is my wish that she administer same without bond and independent of the Probate Court, and that the Probate Court take no further action in this matter of my estate than the probating and registration of this my last will and testament, and the return of an inventory, appraisement and list of claims. This document has been wholly written by myself with my own hand.

"Witness my hand this 20th day of November, A.D. 1933.

"Henry Redmond

"At the request of Henry Redmond, the testator herein, who acknowledged to us that he wrote and signed the above instrument, we now in the presence of Henry Redmond and in the presence of each other sign our names as attesting witnesses this 21st day of November, A. D. 1933.

"T. A. Anderson
"Eva McC–Anderson."

Thereafter, on March 30th and March 31st, 1937, the said Henry Redmond wrote his son, John Lawrence Redmond, as follows:

"March 30, 1937
"Dear Lawrence,

"I am still improving but not quite well yet. I am negotiating, at the present time, to lease the balance of the space of my lots on Leopard Street between the Station and Plaza Hotel. If it goes through it will mean, this:

"Less worry about paying my taxes; protection of my reserve; better protection for my comfort and maintenance, and protection of my emergency fund for my illness and funeral expenses (cremation) when that becomes necessary and besides what I may spend in my recreation. All of this without having to call upon my capital which is my income producing. And, of course, under such a plan you and Katherine (his sister) will get all of my property free of indebtedness, besides I am adding to my capital, as it is possible such as buying for cash my Rancho Refugio, a place where one could go and not know of any depression in the world.

"Rancho Refugio with a river front of more or less of 2000 feet with all riparian rights will mean some day a big prize which you and K will enjoy or your heirs.

"This land will produce anything that California has:

"Corn— it means cash at once,
"Beans— "     "     "     "     "
"Cotton—"     "     "     "     "
"Meat—few heads of cattle,
      "Few heads of fine goats and sheep—Chickens & eggs, hogs.

"These articles above mentioned are the products which you sell at once in the

market here in Laredo, Corpus Christi without any trouble. Of course the steers, mutton, chickens and a few head of hogs would have to be fed from the food. You would grow alfalfa, milo-maize, cane & cetera, About 30 acres, all you would need in cultivation (in irrigation), cost of production.

"Not more than 2 men at $20 each month for each and quarters for them. Pump or pomona would cost approximately $300 that would furnish water for 30 acres—not more than 3 irrigations a year. Steers would have to be fed 90 days and their weight would amount to from 700 to 800 pounds (fat). The presence price now is $9 per 100 pounds.

"Of course for the house use all vegetables, but for the market not a sure crop for population is not large and would complicate the work or rather it would take larger investment.

"Of course oranges, lemons, grapefruit, grapes, date palms require special attention and people can do without them, but they cannot do without corn, beans and meat and cotton—the first three items to eat and cotton for clothing. I hope to buy, if I can, have not been able yet, a few more acres adjoining my holdings and I think you & K will have all you need. If my lease goes through I hope to offer the party more than I have paid to get it.

"You know that the enhancement in value of such real estate is better than a high rate of interest on money and much safer. Of course, if you have the reserve to protect you from taxation or if you can (convert) improve your holdings so it will pay the taxes and besides increase in value, and the value will at all times in excess of a high rate of interest (such interest as is allowed now.)

"Well I feel that I must stop and rest. With love to all from us. (it is cold here now). When you can let me hear from you.

"Loving father,     Henry Redmond
"P. S. Take good care of yourself."

"March 31, 1937.
"Dear Lawrence,

"Your letter came yesterday. I am glad to say to you that I am improving. My eyes bother me a little yet, but the proper glasses will correct that later.

"I wish to say that I have leased the balance of the Leopard Street property for six years. I sold the home house for a little more than it cost me 20 years ago. This is a great relief to me for I do not have to worry about my taxes and besides I have the property for you and Katherine which is a very valuable piece of real estate. I consider it better than oil interest. The balance of the property I own still intact and all free of indebtedness. I have leased the property without having to spend anything on the property—for a parking place—for the first 3 years for 125 each month in advance, the last 3 years 150 each month in advance. Of course if I had been younger and well I could have waited for better terms, but when you consider that rest and worry and mental attitude will aid me to get well now I think I have done well.

"The thought of being a charity subject has worried me very much but now I am free of that thought and at the same time, I can have my recreation to enjoy myself and not impair the value nor loss of my property which I take a great pleasure in leaving it to you and Katherine. I feel now that I have reached my objective for which I have worked so hard.

"This is a great pleasure to me for I know you both can easily take good care of it, the income from it will keep you fine and there will be plenty left for your heirs. Do not you think this is a great satisfaction to me. I shall always have sufficient to go to see you as long as you cannot come to see me. This is a great pleasure which I look forward to. I am doing everything to keep me in good condition. They have about 125 men working on the highway near Rancho Refugio, started yesterday.

"I told Nellie to tell you if it was possible for you to get me a small cottage near a mountain furnished that I could rent, about 5 to 10 miles from your place comfortable and reasonable. I feel that I could not accept your hospitality. I would rather have a cottage as I will have Nayo to do my cooking and Cetera.

"Love from us to you all.
"Loving Father     Henry Redmond."

It should be said here that both said letters were written wholly in the decedent's own hand, as was said formal will, which was also executed by two witnesses, who signed as such, in the form and manner provided by statute in cases of wills not wholly written by the testator. Art. 8283, R.S.1925.

The testator, Henry Redmond, died on July 1, 1937, and thereafter his widow, the said Ida Durand Redmond, filed her application in the County Court for probate of the formal will, which was contested by her son, John Lawrence, who offered said two letters for probate in lieu of the prior formal will. In the County Court, and in the District Court on appeal, the formal will was ordered probated, and the letters rejected. The trial in the District Court was by jury, who found, in answer to the sole issue submitted to them, that the decedent did not intend said letters to be his last will and testament. John Lawrence Redmond, the sole contestant below, has appealed. He will be referred to in this appeal as contestant, and his mother, Ida Durand Redmond, as contestee.

■ There is, and could be under the record, no contention that the formal will executed by Dr. Redmond and probated below did not have the effect of legally devising all his property to his wife, subject only to subsequent legal revocation of the will. The sole question of law presented here is, Did Dr. Redmond's letters of March 30th and 31st, 1937, have the effect of revoking that will and defeating his clear intention, therein plainly expressed, to devise all his property to his wife? We answer the question in the negative.

■ The true and just rule is that although a will may be revoked in whole or in part by express language, or by necessary implication from express provisions of a later instrument, yet such revocation and substitution may be effectuated only by clear and unambiguous language showing a definite intent to revoke. The rule may be more fully expressed by the statement that "the intention to revoke, to be effective, must be expressed as clearly and emphatically as" the devise sought to be revoked. Laborde v. Bank, Tex.Civ.App., 101 S.W.2d 389, writ refused and authorities there cited.

■ It seems obvious to us that the testator's two letters here fall far short of the requirements of the rule, and that they certainly cannot be given effect to revoke the solemn will of the testator, prepared by his own hand, and executed and published with all the formalities and solemnities prescribed by law to give sanctity to a last will and testament. This is particularly true here in view of the fact that there is not the least extrinsic evidence in the rec-

ord that the decedent intended to revoke his will by writing those letters, or by any other conduct. The only evidence in the record extrinsic of the writings was the uncontradicted testimony of disinterested witnesses that shortly prior to his death the testator repeatedly stated that he had made his will leaving all his estate to his wife. Whether this extrinsic evidence be considered, or not, the judgment must be affirmed on the writings, as a matter of law, without regard to other questions raised in the appeal by appellant.

The judgment is affirmed.