Mabel Menke LOGUE et al., Appellants,

v.

Ferd SCRIVENER et al., Appellees.

No. 13886.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 21, 1962.

Rehearing Denied March 21, 1962.

Boyle, Wheeler, Gresham, Davis & Gregory, A. W. Worthy, San Antonio, for appellants.

Walter P. Brenan, Trueheart, McMillan, Russell & Westbrook, San Antonio, for appellees.

MURRAY, Chief Justice.

This is a suit to construe a codicil to the will of Hilda Menke Scrivener. The codicil is in her handwriting and reads as follows:

"6–29–1953

About Contents of This Notice of my last Wish—
Arnold R. Scrivener shall be The Gaurdine of The Live Oak Co Farm
This shall be devided in 3 equal parts—My Oil Well Money—
#1 My Husband Arnold Scrivener—
#2 My sister Mabel Menke Logue
#3 My Brothers 5 Boy's—Name's—
Monroe G Menke—
Henry Menke .
Harold Menke
Sid Menke
Ray Menke
in case There are Oil Wells on place—These 5 Boy's portion shall be put in a Trust fund for 10 year's—and if They go to court about This—They shall not get 1 cent" / and at The death of my Husband His share shall go to Menke Boy's and at The death of my sister her share shall go—To Charles Goodnough Children—only—Hilda Menke Scrivener
 H I. Scrivener ••

The trial court granted a motion for summary judgment and construed the codicil as merely modifying the will of Hilda Menke Scrivener, so that the codicil only disposes of the oil estate in a 300-acre farm located in Live Oak County, and as having no effect on the surface estate or the gas estate in the farm as disposed of by the original will. There is no question raised as to the provision placing the interest of the sons of her brother in a ten-year trust. From this judgment plaintiffs have appealed.

It is the position of appellees herein that the codicil had the effect of modifying the original will only as to the oil estate, while appellants contend that the effect of the codicil was to revoke the prior will and to make a completely different disposition of the Live Oak County Farm. Both the will and the codicil have been admitted to probate. The codicil does not expressly revoke the will, and therefore the two instruments must be construed together in determining the intention of the testatrix. 57 Am.Jur. 416, § 608; First Christian Church of Temple v. Moore, Tex.Civ.App., 295 S.W.2d 931. If the intention of the testatrix can be arrived at from the four corners of the will and the codicil, considered as one instrument, then a question of law only is presented and there are no material fact issues to be passed upon by a jury or other trier of facts.

We have concluded that the intention of the testatrix can be determined from the will and codicil, when construed together, and therefore there was no impropriety on the part of the trial court in deciding this case by summary judgment. Huffman v. Huffman, Tex., 339 S.W.2d 885; Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943; Dees v. Amarillo National Bank, Tex.Civ.App., 332 S.W.2d 126; Weathers v. Robertson, Tex.Civ.App., 331 S.W.2d 87; Ellis v. First Nat. Bank in Dallas, Tex.Civ.App., 311 S.W.2d 916; Flower v. Dort, Tex.Civ.App., 260 S.W.2d 685; Ross Coal Co. v. Cole, 4 Cir., 249 F.2d 600.

■ The original will left all of testatrix's property of which she might die seized and possessed to her husband, Arnold Roland Scrivener, which included the Live Oak County Ranch, consisting of three hundred acres. By the codicil she expresses the intention not to disturb the rights of her husband as to the surface estate, but to make a different disposition of the oil estate, which she refers to as "My Oil Well Money." She directs that the oil estate be divided into three equal parts; one part to go to her husband for life, and upon his death to the five sons of her brother; another part, to her sister, Mabel Menke Logue, for life and at her death to her grandchildren, who are described as the children of Charles Goodnough; and the third part, to the five sons of her brother, who are named in the codicil. She further provides that if there is revenue from oil wells on the farm, the interest of the five boys shall be held in trust for ten years.

The only ambiguity contended for by appellants is the meaning of the sentence, "This shall be devided in 3 equal parts— My Oil Well Money." The codicil was in the handwriting of the testatrix, who was a German-American. She spoke German better than English, and had very little formal education. There is a photostatic copy of the codicil in the transcript, and we have copied it as nearly as can be done on a typewriter.

There is no period after the word "Farm" but the sentence above begins with a capital letter and also begins on a separate line. It is true that the phrase "My Oil Well Money" is set off by two dashes, but when it is considered that in the German language the subject of a sentence is often placed at the end rather than at the beginning, we experience no difficulty in determining that the subject of the sentence is "My Oil Well Money," and not the Live Oak County Farm. When this is determined, then the intention of the testatrix becomes perfectly clear and understandable. Thus a meaning is given both to the will and the codicil and the intention of the testatrix as to both instruments is obvious.

■ Appellants contend that the first sentence of the codicil is sufficient to revoke the will. We do not agree. Whatever testatrix may have intended by this vague sentence, it falls far short of revoking the will. For a codicil to revoke a prior will, it must use clear and unambiguous language. Baker v. Wright, Tex.Civ.App., 157 S.W.2d 470; Redmond v. Redmond, Tex.Civ.App., 127 S.W.2d 309; Laborde v. First State Bank & Trust Co., Tex.Civ. App., 101 S.W.2d 389. It is clear that testatrix knew there were no oil wells on the Live Oak County Farm and that it was not even under an oil lease, but in her broken English she was referring to the oil estate as "My Oil Well Money."

We are asked by appellants to transpose the expression "My Oil Well Money" from the place where it is found in the codicil to a place just after the names of the five sons of her brother, and thus leave nothing for the phrase, "This shall be devided in 3 equal parts" to refer to but the Live Oak County Farm. To make this transposition would give to the codicil a meaning which the testatrix did not intend. We must leave the codicil as testatrix wrote it, so long as its meaning can be understood.

The construction we give to the will and codicil renders extraneous evidence inadmissible.

The remaining contentions presented by appellants are rendered immaterial by the interpretation and construction given to the will and codicil by the trial court, which we here approve.

The judgment is affirmed.