**Mrs. Fred J. ASHLEY et al., Petitioners,.**

v.

**Kate Howard USHER, Respondent.**

**No. A–10069.**

Supreme Court of Texas.

Nov. 11, 1964.

Rehearing Denied Dec. 31, 1964.

Lola Bonner, Rockport, for petitioners.

Hicks, Dollahon & Wohlt and Frank G. White, Houston, for respondent.

GRIFFIN, Justice.

The holographic will of Howard S. Cunningham dated August 7, 1961, was admitted to probate by the Aransas County Court. On appeal to the district court by contestant, Kate Howard Usher, the jury found that the testator possessed testamentary capacity; that in executing the will he was not acting under undue influence; that he signed the will offered for probate with the intent that the same should be his last will and testament. The following issue was also submitted and answered:

> "Do you find from a preponderance of the evidence that Exhibit P–1 (the will in question) had not been revoked by Howard S. Cunningham at the time of his death?" (Issue No. 3).

The jury was instructed to answer this issue "yes" or "no" and gave the answer "no." It is this issue and answer thereto which lie at the root of the problem here. We notice that the issue is cast in the negative form in order to place the burden of proof properly on the proponent.

In our case there were no objections by either party to the submission of Special Issue No. 3, or any request for the submission of additional issues.

On motion of the proponents, the trial judge disregarded the jury's finding to this issue, holding that there was no evidence that the will had been revoked by the testator and accordingly entered judgment that it be admitted to probate as his last will and testament.

The Court of Civil Appeals properly takes the position that according to the finding of the jury, the proponents failed to carry their burden to show that the will offered for probate had not been revoked. That court further being of the opinion that there is evidence to support that jury finding, reversed the trial court and rendered judgment denying the will to probate. Usher v. Gwynn, 375 S.W.2d 564.

The issues of testamentary capacity and undue influence are not before us. The

sole question presented here, in view of the jury's finding, is whether proponents discharged their burden to show as a matter of law that the will offered for probate had not been revoked.

The will offered for probate distributes the testator's property as follows: to St. Peter's Episcopal Church, 10 shares of corporate stock; to Mary and Fred Ashley, 15 shares; to Mr. and Mrs. L. V. McLester, 5 shares; to Mr. and Mrs. Cloberdant, 5 shares; and the remainder to Mrs. Ruth Lawton Gwynn. The will offered for probate consisted of three pages and was witnessed by Lorna Sontag and Edgar Jacobson. It was contained in an envelope on the back of which was written by the testator, "my will, Howard S. Cunningham."

The testator's next of kin are Dr. Francis C. Usher and his sister, Miss Kate Howard Usher, niece and nephew. Dr. Usher disclaimed any right, title or interest in the estate in favor of his sister.

■ Section 88 of the Probate Code, V.C. S. in so far as relevant to this case, provides:

"* * *

"(b) Additional Proof for Probate of Will. To obtain probate of a will, the applicant must also prove to the satisfaction of the court:

"* * *

"(3) That such will was not revoked by the testator."

Thus, the burden of establishing that a will has not been revoked is placed by this statute on the proponent of the will sought to be probated. Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001 (1925); May v. Brown, 144 Tex. 350, 190 S.W.2d 715(5), 165 A.L.R. 1180 (1945); McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025 (1903); Crane v. Pierce, 257 S.W.2d 510(2) (Tex.Civ.App., 1953, writ refused).

■ The rule enumerated in the above cases is that where testator's will produced in court comes from the custody of those to whom it has been delivered by the testator, or is found among testator's papers in a place he usually keeps his valuable papers, and there is no suspicion cast upon the genuineness of the will, there exists a presumption that the will has not been revoked. Under such circumstances, a proponent has satisfied the statutory requirement to prove no revocation.

Now, let us examine the facts as shown in this record.

The witness, Dr. Francis C. Usher, who was not a party to this suit, and who was a nephew of the deceased testator, testified that upon hearing of his uncle's death, he and his wife immediately went to Rockport, Texas, the home of his uncle.

Dr. Usher and wife arrived in Rockport November 8, 1961, the day following his uncle's death. Upon contacting his uncle's local physician, and at the direction of this physician, the doctor and his wife went to the office of an attorney in Rockport, who had the keys to testator's apartment, and, so the Ushers were informed, had testator's will.

The doctor swore that when he and his wife reached the attorney's office and had visited a few minutes, the attorney showed to the doctor and his wife what the attorney said was Howard C. Cunningham's (the testator) last will and testament; that the will consisted of only two pages, to the best of the doctor's recollection, and was wholly in the handwriting of testator; that the will shown him was witnessed by a Mrs. Ashley and a Mrs. Gwynn, who were the beneficiaries named in the will; that the will shown him did not have named therein two other beneficiaries whose names appeared in the will offered for probate.

The doctor positively testified that the will offered for probate and which contained three pages was *not* the will shown him by the attorney on the visit to the attorney's office November 8, 1961.

Mrs. Virginia Usher testified that she accompanied her husband, Dr. Usher, to the

attorney's office on November 8, 1961; that only the attorney and she and her husband were in the office when the attorney showed them what the attorney said was the last will of testator Cunningham. Witness testified that she read and examined this will; that it had only two pages; that it was wholly in the handwriting of Cunningham; that it was witnessed by Mrs. Ashley and Mrs. Gwynn and these two were named as beneficiaries therein; that the beneficiaries McLester and Cloberdant, who were named as beneficiaries in the will offered for probate, were not named in the will shown to witness in the attorney's office; that the will shown to witness named only Mrs. Gwynn "as executor and administrator" and that Mrs. Ashley was not named as an executor and administrator. The will offered for probate named both Mrs. Gwynn and Mrs. Ashley as administratrices; that in the will shown the witness in the attorney's office, witness distinctly remembers "that Mrs. Gwynn and Mrs. Ashley were both (each) left 15 shares of stock"; that witness was impressed by the fact that the figures "15" designating the shares left to each Mrs. Gwynn and Mrs. Ashley "came right under each other." The will offered for probate left stock to Mrs. Gwynn and Mrs. Ashley at different figures, as well as leaving stock to others. Witness positively stated the will shown to her was dated August 7, 1961—the date shown on the will offered for probate—but that the will shown her by the attorney was not the will offered for probate. Her testimony in this regard is clear, positive and emphatic and without any qualification.

The will offered for probate was dated August 7, 1961, and the will testified to by Dr. and Mrs. Usher as the one exhibited to them by the attorney was also dated August 7, 1961.

■■ In Page: On Wills, Bowe-Parker Revision (1960), Vol. 2, p. 395, § 21.34 it is stated: "If two or more inconsistent wills are shown to exist and it is impossible to show by evidence which of them was executed last, no effect can be given to any of such wills." Cited as sustaining this proposition are cases from North Carolina, Utah, Virginia and the English case of Phipps v. Anglesey, 7 Brown's Cas. in Par. 443.

This last case is the first recorded authority on this point. Lord Chief Baron was called upon to answer the following question in the case: "Whether two inconsistent wills of the same date, neither of which can be proved to be the last executed, are or are not void for uncertainty?" He answered as follows: "As to the second question, two inconsistent wills of the same date, neither of which can be proved to be last executed, are by the common law of England void for uncertainty so far as they are inconsistent. * * *"

The evidence set out above demonstrates the inconsistencies between the will offered for probate and the will Dr. and Mrs. Usher testified was shown them by the attorney as the last will and testament of Howard S. Cunningham. There is no evidence in the record as to which of the two wills dated August 7, 1961, was executed last.

The above evidence raises an issue as to whether or not the will offered for probate was the last will and testament of Howard S. Cunningham, and therefore it became the duty of the proponents of the will offered to show their will had not been revoked. This they did not do, and having failed in this burden, the will offered for probate cannot be probated.

The judgment of the Court of Civil Appeals is affirmed.

CULVER, Justice (dissenting).

The principal fact issue in this case was whether or not the testator, Howard Cunningham, executed his will as a result of undue influence practiced upon him. The jury determined that question in the negative. The jury also found that Howard Cunningham was possessed of testamentary capacity and that he executed the will

which was offered for probate with the intent that the same should be his last will and testament.

The following issue was cast in the negative form in order to place the burden of proof upon the proponent. By the submission of this issue the court was endeavoring to ascertain whether or not the will for probate had been revoked, but grammatically the negative answer "no" is tantamount to the finding that "We the jury do not find that the will had not been revoked". In my opinion the form of the issue and the requirement of a "yes" or "no" answer led the jury into a state of confusion.

Now this court has held that since there is testimony that this testator executed two wills, though remarkably similar and neither making any bequest to Miss Usher or Dr. Usher, niece and nephew, and since it is not shown by the evidence as to which of them was executed later, no effect can be given to either and the Ushers will take all of the decedent's property.

The sole question presented here is whether there is any evidence to support the jury finding on the revocation issue.

In a will contest the burden of proof to show that the will offered for probate had not been revoked is upon the proponents. Probate Code, § 88(b) (3), V.A.T.S. But where a written will is produced and its proper execution shown, there arises a presumption of continuity and the requirement of the statute in that respect had been met. McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025; Womack v. Woodson, Tex.Civ.App., 169 S.W.2d 786; Wilson v. Paulus, Tex.Com.App., 15 S.W.2d 571; Redmond v. Redmond, Tex.Civ.App., 127 S.W.2d 309; Sien v. Beitel, Tex.Civ.App., 289 S.W. 1057. Any other rule would greatly hamper the probating of wills in this state.

From the proponent's standpoint there was not only the presumption of continuity but there was evidence of non-revocation, including the testimony of both Mrs. Ashley and Mrs. Gwynn that they had never subscribed as witnesses to any will of Mr. Cunningham.

Dr. Usher disclaimed any right, title or interest in the estate in favor of his sister. Dr. Usher testified that he and his wife went to Rockport on the day following Mr. Cunningham's death and were referred to proponent's attorney who exhibited to them a document described as Mr. Cunningham's last will. He further testified that this document was not the will offered for probate, because to the best of his memory it consisted of only two pages and was witnessed by the beneficiaries, Mrs. Ashley and Mrs. Gwynn.

Mrs. Usher testified that the witnesses shown on the document were Mrs. Ashley and Mrs. Gwynn; that Mrs. Gwynn and Mrs. Ashley were both left 15 shares of stock; that the Cloberdants and the McLesters were not mentioned in this document; that it did include the provision for St. Peters Episcopal Church; that the document consisted of only two pages and showed to have been executed on August 7, 1961, which was also the date of the will offered for probate.

In my opinion the testimony of Dr. and Mrs. Usher is too vague and uncertain to be accepted as having any probative effect. The well-known rule as to "no evidence" does not require us to disregard matters of common knowledge or those facts which are obvious or established beyond contradiction. Dr. and Mrs. Usher were in Miss Bonner's office for only a few minutes; neither copied or took any notes of the contents of the document so that this testimony, given more than a year later, was entirely a product of their recollection. They both testified that in looking over the will they were surprised, but it is quite evident that this surprise was occasioned by the fact that Mr. Cunningham had made no provision for either Dr. Usher or Miss Usher in his will. The contents of the will were important to Dr. Usher only as they affected him and his sister. Otherwise, it would be of little interest to him how his

uncle might distribute the property among his friends and what proportion should be given to each. Actually Dr. Usher testified to no material inconsistencies in the two documents and the only ones related by Mrs. Usher were that Mrs. Gwynn was bequeathed 15 shares of stock instead of the residue of the estate, and that the Cloberdants and the McLesters were not named in the document she saw. While Mrs. Usher was very positive in her testimony as to her recollection of the contents, it is somewhat noteworthy that she either did not read the entire instrument or did not recollect to whom the will devised the greater part of the estate. Out of the 104 shares of corporate stock owned by Mr. Cunningham at the time of his death she accounted for the disposition of only 40 shares and also failed to account for the disposition of the cash in the bank. So that all of the testimony in this case shows that the will was written on two pages in the handwriting of the testator and signed by him; that St. Peters Episcopal Church was to receive 10 shares of the corporate stock, Mrs. Ashley was to receive 15 shares, and a substantial bequest was made to Mrs. Gwynn.

For there to be competent evidence supporting the jury's finding it must have warranted a belief that Mr. Cunningham on the same day executed two wills of the same general purport without attempting to revoke either expressly or by mutilation or destruction but on the other hand preserving both so that they would eventually come into the hands of those whom he had appointed executrices and from them into the hands of their attorney. It must also warrant the belief that they selected which of the two wills would be offered for probate and that their attorney from some unexplained motive or from no motive at all exhibited to Dr. and Mrs. Usher the one which they decided not to probate. There could have been no motive to deceive Dr. Usher since if there had been two wills neither made any provision for him or his sister and it mattered not at all to them, which was probated.

The statute covering the matter of revocation contains the following provision:

"No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the testator destroying or canceling the same, or causing it to be done in his presence." § 63, Probate Code.

There is no proof here of any subsequent will or declaration in writing executed with like formalities.

The import of Dr. Usher's testimony is that Miss Bonner showed him a document which she said was the last will of Mr. Cunningham and which was in the handwriting of Mr. Cunningham, but neither he nor Mrs. Usher testified from their own knowledge or observation that the document purported to be the last will and testament of Mr. Cunningham or that the document appeared to be executed by Mr. Cunningham as such.

The test as laid down in the often-cited landmark case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, is "not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established," and "that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'." In our opinion the testimony here merely raises a "surmise" or "suspicion" that Mr. Cunningham executed two wills on the 7th day of August in due form or that the attorney for the proponents exhibited a will to Dr. and Mrs. Usher which was not the one offered in evidence in this case.

The cases relied on by the Court of Civil Appeals, namely, May v. Brown, 144 Tex.

350, 190 S.W.2d 715, 165 A.L.R. 1180 (1945) and Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001, are not controlling on the facts. In May v. Brown the testimony was clear and emphatic that the testator had executed a new will, wholly in his own handwriting, and also had asked two young women to sign as witnesses. The provisions of this will were not shown, but from all the evidence the conclusion was fairly warranted that this will was changed to make provision for his wife and children. In the second case the controlling issue was said to be whether or not Mr. Brackenridge executed a will subsequent to the 1913 will with the present intention that it be his will and to revoke all former wills.

For the foregoing reasons I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court admitting the will to probate.

SMITH, HAMILTON and STEAKLEY, JJ., join in this dissent.