James Henry MAYO and Diane Mayo, Appellants,

v.

Dorothy MATTIZA, Appellee.

No. 690.

Court of Civil Appeals of Texas, Corpus Christi.

April 20, 1972.

Roger Butler, Robstown, for appellant.

Geary, Brice, Barron & Stahl, W. S. Barron, Jr., Dallas, for appellee.

## OPINION

BISSETT, Justice.

This is a will contest. Walter H. Mattiza, the decedent, executed a self-proving will on July 28, 1966 leaving all of his property to his surviving wife, Dorothy Mattiza, proponent of the will in the lower courts. James Henry Mayo and Diane Mayo, contestants in the courts below, contested the offer of probate of that will. They contended that it had been revoked by the testator by the execution of a late. holographic will. The judge of the Probate Court of Nueces County, Texas refused to admit either the July 28, 1966 will or the alleged holographic will to probate as the last will and testament of the decedent. All parties then perfected an

appeal to the District Court of Nueces County, Texas, where the same issues were joined as in the Probate Court. The case was tried before a jury. The trial court submitted a single issue, reading:

"Do you find from a preponderance of the evidence that Walter H. Mattiza did not revoke his will theretofore executed by him on July 28, 1966?"

The jury answered: "He did not". Judgment was then entered on the verdict. The will dated July 28, 1966 was admitted to probate. The contestants have timely perfected their appeal. We affirm.

James Henry Mayo and Diane Mayo will be referred to as appellants and Dorothy Mattiza will be referred to as appellee.

There were no objections by any of the litigants to the submission of the one special issue, above quoted. There was no request for the submission of additional issues.

Appellants, by their first point of error, say that the evidence is factually insufficient to support the jury's finding. We, are, therefore, required to review all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), and the many cases that have followed that decision.

The issues of testamentary capacity and undue influence are not before us. We examine the facts as shown by the record.

Walter H. Mattiza was married four times. No children were born to any of his marriages. He never adopted a child. He and appellee, his fourth wife, were married on July 13, 1966. He died on March 19, 1969 at the age of 61. He was survived by his wife, and by his father, H. J. Mattiza, and by his sister, Mrs. Vannie Belle Mayo.

Mrs. Vannie Belle Mayo (joined by her husband, Collis Mayo), individually and as next friend of H. J. Mattiza, were the original contestants. They filed their contest on April 14, 1969. They alleged that the decedent was unduly influenced by appellee in the making of the will. H. J. Mattiza died in September, 1969. Mrs. Vannie Belle Mayo (joined by her husband, Collis Mayo), by deed of gift executed by them on December 16, 1969, quitclaimed all of her interest in the Estate of Walter H. Mattiza to her children, James Henry Mayo and Diane Mayo. Her children then replaced Mrs. Vannie Belle Mayo and husband, Collis Mayo, as contestants. They averred in their trial pleading that the written will executed by Walter H. Mattiza on July 28, 1966, was revoked by him on February 26, 1969 by an instrument dated February 26, 1969, wholly in his handwriting which they alleged read as follows:

"To whom it may concern: I will all my property to my sister, Vannie Belle Mayo. Walter Mattiza."

The words "my sister" were deleted from the pleadings during the trial in the District Court.

The statement of facts is voluminous. Direct examination of the witnesses was comprehensive and cross-examination was thorough. We have read the entire record and summarize the essential testimony.

The will dated July 28, 1966 was drawn by Mr. Wade, a lawyer in Corpus Christi. It was attested by two of his secretaries. They testified that as far as was known to each of them, the will was never revoked. Subsequent to the execution of the will, Mr. Mattiza came by Mr. Wade's law office on several occasions. Mr. Wade went hunting with him from time to time; he never heard Mr. Mattiza mention anything about revoking the will.

Odessa Lampkin, Walter Mattiza's maid for twenty-three years prior to his death, said that the decedent's actions around the house showed that he loved and respected his wife, and that they were a happy couple. James L. Secrest, a neighbor of the Mattizas, never noticed any problems or difficulties between Walter and Dorothy Mattiza.

Walter H. Mattiza entered the hospital during the early part of 1969. He had an operation in February, 1969. He was discharged from the hospital about March 12, 1969. He died at his home in Robstown, Texas about one week later. During the time that he was in the hospital, his wife, appellee, had a cot in his room where she slept every night.

Appellee located the July 28, 1966 will in a filing cabinet in their home in Robstown, where they usually kept their valuable papers. Before filing the will for probate, she visited Mrs. Vannie Belle Mayo and told her of the will and of her selection of an attorney to handle the estate. During their conversation, appellee testified that she asked Mrs. Mayo "if, to her knowledge, my husband had ever executed another will, because we had considered it?" She, appellee, said that Mrs. Mayo's answer was "no, but that she knew what he intended". Nothing was said by Mrs. Mayo at that time about a subsequent holographic will. Mrs. Mattiza then took the will to her attorney, who applied for probate thereof. Appellee testified that as far as she knew, the will had never been revoked.

Over objection by appellee, Mrs. Vannie Belle Mayo was permitted to testify freely as to transactions between her and Walter H. Mattiza, the decedent. Mrs. Dorothy Mattiza, appellee, was precluded from giving any testimony in this respect. Those rulings by the trial court are not before us in this appeal.

Appellants did not produce the alleged handwritten will in the lower courts. It does not appear in the record before us. Mrs. Mayo was the only person who claimed to have ever seen such document. She testified that she visited her brother, the decedent, in his hospital room during the afternoon of February 26, 1969. She said that while she was there he showed her a piece of paper wholly in his own handwriting, dated February 26, 1969, that he said was his will. She was sitting in a chair in the room at that time. Walter H. Mattiza was lying in the bed. No other person was present. She recalled that the alleged will was on top of some papers that were stacked on a table in the room, where it remained at all times during her visit.

There is some doubt as to whether Mrs. Mayo ever actually read the will. There is an apparent inconsistency with respect to that vital factor in the case. On direct examination, in response to the question "I will ask you if you read it?" Mrs. Mayo said: "Yes sir. I read it after he told me what was in it." However, on cross-examination it was brought out before the jury that in her deposition that was taken before date of trial, in answer to the question "You did not read the paper, did you?", she replied: "No sir." A consideration of all of her testimony would reasonably support the conclusion that she did not read the will but that Mr. Mattiza told her of its contents and that she believed him.

Appellants introduced into evidence pictures that show the position of the chair in which Mrs. Mayo was sitting, the hospital bed, and the table on which the alleged handwritten will had been deposited. These pictures reveal that the chair was at the left of and near the foot of the hospital bed, the table was against the wall and opposite the foot of the bed, and there was a passageway about two feet wide between the table and the bed. The exact place on the table where the stack of papers was located is to the left of and to the rear of the chair; the papers appear to be about an arm's-length away from the chair.

Mrs. Mayo needed glasses in order to read ordinary printed matter. She admitted that she was not wearing her glasses on February 26, 1969, when she visited the decedent in the hospital. She testified that her brother scribbled, that his handwriting was hard to read, but that she "could read it by picking it up and looking at it." When testifying at the trial (July, 1971), she could not read the clerk's file stamp on documents on file in the case, the double

spaced typing in pleadings, or the double spaced typing in her deposition without the aid of her glasses.

Mr. Stubbs testified that Walter H. Mattiza told him in either late February or early March, 1969, that "he had changed his will in favor of his sister." It was, however, brought out on cross-examination that Mr. Stubbs had tried to get the decedent not to marry appellee and that he felt that Walter was turned against him by appellee.

Mr. Walter H. Mattiza was a successful and prominent farmer in the Robstown area. It is abundantly clear that he was a strong man, firm in his convictions, did what he wanted to do, saw those persons whom he wanted to see, and made his own decisions. He was not easily influenced; he was never intimidated by anyone.

This was clearly a case for the jury. There are many questions that remain unanswered in the record. There are apparent contradictions in some areas of the evidence. There are inconsistencies and improbabilities in the testimony of Mrs. Mayo. The picture exhibits depicting the relative position of Mrs. Mayo with respect to the location of the papers on the table, coupled with the fact that she was not wearing glasses at the time, demonstrate that it was extremely unlikely (if not impossible) for Mrs. Mayo to have read the will at the distance she was sitting from its location on the table. She did not get up from the chair and go over to the table and pick up the document. It was then located at least two feet distant from her eyes and about twelve inches below eye level. It was shown at the trial that she could not read ordinary typing in a document held by her in her hands without using her glasses. She was not wearing her glasses on February 26, 1969. She knew that appellee was a frequent visitor of the decedent and must have been aware that appellee slept at night in the same room with him. She said that the decedent had complained to her within a few weeks before he had his operation that appellee "was trying to trade all of his old equipment for new equipment in order that she might have all the equipment as community property." She knew that the July 28, 1966 will that left everything to appellee was in existence. Yet, when she learned of the handwritten will that named her as sole beneficiary, she did not take possession of that instrument. No witness offered any explanation of what happened to the handwritten document or why it was not introduced in evidence other than it was stated that it could not be produced at the trial.

Mrs. Mayo further testified that she had a telephone conversation with the decedent after February 26, 1969, but while he was still in the hospital. He told her on that occasion that "Dorothy had taken all of his papers and I don't know what she has done with them." Therefore, according to this testimony, both Mrs. Mayo and the decedent must have realized that the handwritten will was no longer in the possession of decedent. Walter H. Mattiza was at home for about a week before he died. The matter of the missing papers was not pursued by him during that week. He could, had he elected, have written another will in his own handwriting during the week that he was home that would have revoked the July 28, 1966 will. He did not do so. Under the conditions existing and the circumstances related by Mrs. Mayo, it would seem that she would have taken the handwritten will with her when she left the hospital room on February 26, 1969. This she did not do.

The jury was entitled to consider all of the inconsistencies and unanswered questions and undoubtedly did consider them in answering the one special issue submitted to them. It has long been settled that the jury is the sole judge of controverted fact issues raised by the evidence, of the credibility of the witnesses, of the weight to be given to their testimony, and of the inferences to be drawn

therefrom. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Bradford v. Fort Worth Transit Company, 450 S.W.2d 919 (Tex.Civ.App.—Ft. Worth 1970, writ ref'd n.r.e.); City of Houston v. McFadden, 420 S.W.2d 811 (Tex.Civ.App.—Houston 14th 1967, writ ref'd n.r.e.). The issue of revocation of the will dated July 28, 1966 was resolved by the jury against appellants. The evidence supports the answers made by the jury. If the facts will support with reason a verdict in favor of either appellant or appellee, the decision to be made rests exclusively with the jury. Benton v. Wheless Drilling Company, 440 S.W.2d 373 (Tex.Civ.App.—Houston 1st 1969, writ ref'd n.r.e.); Tuchin v. Chambers, 439 S.W.2d 849 (Tex.Civ.App.—Ft. Worth 1969, writ ref'd n.r.e.).

█ In a will contest the burden of establishing that the will offered for probate had not been revoked is upon the proponent. Texas Probate Code, § 88(b) (3), V.A.T.S.; Ashley v. Usher, 384 S.W.2d 696 (Tex.Sup.1964). This burden is discharged and the will is entitled to probate when its due execution is proved in the absence of circumstances which cast suspicion on it, or in the absence of evidence of revocation. May v. Brown, 144 Tex. 350, 190 S.W.2d 715 (1945); Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244 (1924); McElroy v. Phink, 97 Tex. 147, 76 S.W. 753 (1903); Wilson v. Paulus, 15 S.W.2d 571 (Tex. Comm'n App.1929); Stewart v. Long, 394 S.W.2d 25 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). In the instant case, execution of the July 28, 1966 will is proved in the manner required by law. There are no circumstances that cast any suspicion at all on its execution, but there is evidence of revocation. Therefore, the real issue in this case is not whether the July 28, 1966 will was proved, but whether or not the proponent (appellee) of that will, proved that it was not revoked. That burden was properly cast on appellee by the trial court.

The form of the issue that was submitted to the jury was proper. Ashley v. Usher, supra; French v. French, 148 S.W.2d 930, 934 (Tex.Civ.App.—El Paso 1940, writ dism'd. judg. corr.).

We hold that appellee, the proponent of the will dated July 28, 1966, that was admitted to probate by the District Court of Nueces County, Texas, by order entered on July 13, 1971, discharged the burden of proving that it had not been revoked at the time of the testator's death. Accordingly, appellants' first point is overruled.

█ Appellants, by their second point of error, complain of the exclusion of a portion of the testimony of their witness, Jean Dittlinger, as set out in their bill of exceptions. Mrs. Dittlinger was a stepdaughter of decedent and a daughter of his third wife. Most of the excluded testimony pertains to acts of conduct by Walter H. Mattiza and appellee before their marriage implying possible indiscretions on several occasions. Portions of that testimony dealt with property disputes and adjustments between Jean Dittlinger and Walter H. Mattiza following her mother's death on March 4, 1965. She had no personal contact with Walter H. Mattiza from the date of his marriage until the time of his death. The excluded evidence was not relative or material to any issue in this case.

█ Moreover, if the action of the trial court, in sustaining appellee's objection to the introduction of such testimony be error, under this record, such error in excluding the testimony is harmless as it did not amount to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. A correct and proper judgment was rendered by the trial court. Appellants' second point is overruled.

The judgment of the trial court is affirmed.